**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| JASON WAYNE HURST, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:10CV725 |
| | ) | |
| GERALD BRANKER, Warden, Central | ) | |
| Prison, Raleigh, North Carolina, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Petitioner's Motion for
Leave to Conduct Discovery (Docket Entry 25).  Because Petitioner
cannot show "good cause" for the discovery he requests,
particularly in light of <u>Cullen v. Pinholster</u>, ___ U.S. ___, 131
S. Ct. 1388 (2011), the Court will deny his instant Motion.

### BACKGROUND

In 2004, Petitioner received a death sentence in the North
Carolina Superior Court in Randolph County following his conviction
for first-degree murder; the North Carolina Supreme Court
unanimously affirmed both Petitioner's conviction and sentence.
<u>State v. Hurst</u>, 360 N.C. 181, 624 S.E.2d 309 (2006).[1]  Through
counsel, Petitioner thereafter filed a Motion for Appropriate

---

[1] According to that affirmance, "[t]he evidence indicated that [Petitioner]
began planning to kill the victim as soon as their telephone conversation [in
which they agreed to meet to discuss the sale of firearms] ended the day before
the murder; that[, when they met as planned, Petitioner] urged the victim to walk
into the field for the ostensible purpose of setting up targets [at which they
could test-fire the firearms they met to discuss], then shot [the victim] without
provocation; that the victim asked [Petitioner] not to shoot him again; that
[Petitioner] fired three spaced shots into the victim; that the third shot was
fired into the victim's head as the victim lay helpless, watching [Petitioner];
that [Petitioner] took the victim's keys from his body after shooting him and
drove [the victim's] Thunderbird to West Virginia; that [Petitioner] traded or
sold the victim's two guns; and that [Petitioner] acknowledged that he felt no
remorse." <u>Hurst</u>, 360 N.C. at 208, 624 S.E.2d at 328.

Relief ("MAR") in the state trial court on June 25, 2007. (Docket Entries 2-1, 3-1.)[2]

<u>Claim I of Petitioner's MAR</u>

In his MAR, Petitioner asserted the following "Claim I":

DEFENDANT WAS DENIED THE RIGHT TO COUNSEL AND TO CONFRONT HIS ACCUSERS AT HIS CAPITAL SENTENCING HEARING WHEN A JUROR WAS IMPROPERLY INFLUENCED BY AN EXTERNAL SOURCE PRIOR TO PENALTY PHASE DELIBERATIONS IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES[.]

(Docket Entry 2-1 at 3, 5.) As support for said claim, Petitioner attached and quoted an affidavit from a juror in his case (dated as signed on April 21, 2007). (<u>Id.</u> at 6-7; Docket Entry 4-1).) In particular, he highlighted the following averment by the juror:

During the trial, I often had lunch with my father who worked near the courthouse. <u>Prior to deliberations, I asked my father where I could look in the Bible for help and guidance in making my decision for [sic] between life and death. After the jury had found [Petitioner] guilty but before we decided his sentence, I opened my Bible at home because I wanted to read something to help me with my decision. My father had given me the section in the Bible where I could find "an eye for an eye."</u> That night after reading that section in the Bible, it helped me sleep better. It didn't make the decision any easier. The next day during deliberations, I voted for the death penalty.

(Docket Entry 2-1 at 6 (quoting Docket Entry 4-1 at 5) (emphasis added).)

Petitioner's Claim I asserted that "[t]he communication between [the juror] and her father, in which he directed her to the 'eye for an eye' passage in the Bible to help her with her decision between life and death, constituted an improper external influence

_____

[2] When a document appears in electronic form on the Docket, the Court will cite the docket and page numbers in the CM/ECF footer for such document.

upon her deliberations in violation of the Sixth Amendment. By suggesting that she seek guidance in the 'eye for an eye' passage, her father implied what her decision should be - death." (<u>Id.</u> at 7-8.) According to the Petitioner, this implied message from the juror's father to the juror "tended to influence [the juror's] partiality . . . [and] deprived [Petitioner] of his right to confront and cross-examine his accusers in violation of the Sixth Amendment." (<u>Id.</u> at 8.) Moreover, Petitioner contended that "[p]rejudice should be presumed from this improper contact . . . [and therefore the state trial court] should order a new capital sentencing hearing, or, alternatively, order an evidentiary hearing to resolve any factual disputes." (<u>Id.</u> at 8-9.)[3]

The State answered Petitioner's MAR and moved for denial of various claims, including Claim I; in so doing, the State argued that "the Bible is not an extraneous influence: therefore [the juror's] request of her father and his giving her a Biblical reference concomitantly cannot qualify as 'extraneous prejudicial information' as [Petitioner] would have it." (State's Ex. L.)[4] In support of that position, the State cited, inter alia, the decision in <u>Robinson v. Polk</u>, 438 F.3d 350, 363 (4th Cir. 2006), that denied

---

[3] Petitioner did not identify any potential "factual disputes." (<u>See</u> Docket Entry 2-1 at 5-9.)

[4] State's Exhibit L does not appear in electronic form on the docket. (<u>See</u> Docket Entry 19 at 2 (¶ 12).) The copy in the Court's paper file contains two documents filed in the state trial court: 1) the State's Motion to Strike Hearsay Affidavit; and 2) the State's Answer to Defendant's Motion for Appropriate Relief and the State's Motion to Deny Claims I and III through VII on the Pleadings, and to Dismiss Claim VIII. Each of those two documents has its own pagination. The above-quoted language appears at pages 14-15 of the State's Answer to Defendant's Motion for Appropriate Relief and the State's Motion to Deny Claims I and III through VII on the Pleadings, and to Dismiss Claim VIII.

habeas relief where a juror requested and received a Bible from a bailiff during deliberations and read therefrom an "'eye for an eye'" passage to other jurors in an effort to induce them to "'change their position from one favoring a life sentence to one favoring a death sentence'" because the state court reasonably could have concluded that "'no Biblical passage . . . had any evidentiary relevance to the jury's determination of the existence of aggravating and mitigating circumstances.'" (<u>Id.</u> at 15-16.)

Petitioner thereafter filed a reply in which he further addressed Claim I of his MAR. (<u>See</u> State's Ex. O at 1-4.)[5] He began by asserting that "[t]he State's Motion to Deny Claim One on the pleadings is based upon a faulty premise, that the Bible can never be a component of an improper external influence upon a juror." (<u>Id.</u> at 1 (emphasis omitted).) Further, Petitioner argued that "when [the juror] asked her father for advice as to where to look in the Bible for guidance as to what her decision [between life and death] should be, she invited his opinion as to what her decision [between life and death] should be" and that "when [the juror's father] responded by directing [the juror] to a particular section in the Bible that included an 'eye for an eye passage' [the juror's father] expressed his opinion on that matter." (<u>Id.</u> at 2.) According to Petitioner, "[i]t is *that* opinion which is the improper external influence complained of [by Petitioner], not the Bible itself." (<u>Id.</u> (italics in original).)

---

[5] Said document appears only in the Court's paper file. (<u>See</u> Docket Entry 19 at 2 (¶ 15).)

-4-

Next, Petitioner suggested that the state trial court could take judicial notice that three passages from the Bible's Old Testament (i.e., Exodus 21:24, Leviticus 24:20, and Deuteronomy 19:21) and one passage from the Bible's New Testament (i.e., Matthew 5:38-39) contain the phrase "eye for an eye." (Id. at 2-3.) He opined that an "obvious difference [exists] between the sections in the Old and New Testaments"[6] and thus that the question of which "particular" passage the juror's father identified to the juror represented "a significant factual issue in this case that warrants factual development at a hearing." (Id. at 3.) Finally, based on language in United States v. Cheek, 94 F.3d 136, 141 (4th Cir. 1996) (see id. at 4), Petitioner contended that:

1) the state trial court "should grant a hearing on [Claim I] in order to allow additional development of the facts that support it, including the particular passage [the juror's] father [cited]" (id.);

2) the state trial court "must then determine whether or not the external influence was made upon [the juror] and if so, whether or not it was innocuous" (id.); and

3) if the external influence occurred and does not qualify as innocuous, the state trial court must require the State "to bear the heavy burden of disproving the presumption that the external influence resulted in prejudice to [Petitioner]" (id.).

---

[6] In Petitioner's view, these "Old Testament Passages all state clearly that the punishment to be imposed in a case in which one man causes the death of another is death." (State's Ex. O at 3.) The New Testament quotation cited by Petitioner acknowledges the "'eye for an eye'" phrase, but adds "'whosoever shall smite thee on thy right cheek, turn to him the other also.'" (Id.)

<u>Petitioner's Motion for Discovery by Depositions</u>
<u>during the Pendency of his MAR in the State Trial Court</u>

On October 19, 2007 (two days after the completion of the foregoing briefing by the parties), the North Carolina Superior Court in Randolph County held a hearing on various issues related to Petitioner's MAR, including the State's Motion to Deny Claims I and III through VII on the Pleadings, and to Dismiss Claim VIII. (<u>See</u> State's Ex. C1 at 12, 20.)[7]  The hearing commenced at 9:46 a.m.  (<u>Id.</u> at 3.)  Approximately 26 minutes before the hearing began, Petitioner filed a Motion for Discovery by Depositions. (<u>See</u> Docket Entry 5-2 at 1.)  To that Motion, Petitioner appended an affidavit from Adam Pfeifer (dated as signed on October 18, 2007), who averred that he "was hired to conduct interviews of the jurors that sat in [Petitioner's case]."  (<u>Id.</u> at 7.)

In his affidavit, Pfeifer declared that, "on April 21, 2007, [he] interviewed [the juror in question] at her home . . . [and said juror] agreed to provide [Pfeifer] with an affidavit which tracked [their] discussion."  (<u>Id.</u>)  According to Pfeifer, "[Petitioner's] attorneys asked [Pfeifer] to try to interview [said juror] again to get more details about her conversation with her father."  (<u>Id.</u>)  As a result, "[o]n June 16, 2007, [Pfeifer] returned to [the juror's home] . . . ."  (<u>Id.</u>)  "When [Pfeifer] arrived, [the juror] said she was trying to get her kids dressed. She told [Pfeifer] she was too busy to talk at that time and to return in a couple of hours."  (<u>Id.</u>)  "[Pfeifer] returned in a

---

[7] State's Exhibit C1 consists of a copy of the transcript of said hearing and appears in the Court's paper file.  (<u>See</u> Docket Entry 19 at 1 (¶ 3).)

couple of hours as [the juror had] directed.  Although it appeared
[the juror] was still at the home, [Pfeifer] did not receive a
response and [the juror] did not come to the door."  (Id.)[8]

Pfeifer's affidavit further related that, "on October 9, 2007,
[Pfeifer] interviewed [the juror's] father . . . [who] confirmed
that he had a conversation with his daughter about an 'eye for an
eye' section of the Bible during his daughter's deliberations in
[Petitioner's] trial."  (Id. at 8.)  According to Pfeifer, the
juror's father reported "that he had called his mother [i.e., the
juror's grandmother], who live[d] in [another state], and got a
biblical reference from her before providing it to his daughter."
(Id.)  Pfeifer's affidavit did not assert that the juror's father
failed to answer any inquiry from Pfeifer or that the juror's
father ever refused contact with Pfeifer.  (See Docket Entry 5-2 at
7-8.)  Pfeifer asserted that he "called [the juror's grandmother]
several times in order to speak to her about the conversation she
had with her son but was unsuccessful in reaching her."  (Id.)[9]

Based on the affidavit from the juror attached to the MAR and
on Pfeifer's affidavit, Petitioner argued that the state trial
court "should order the deposition of [the juror, her father, and
her grandmother], as ordering the same will significantly assist in

_____

[8] Pfeifer concluded from these circumstances that the juror did not
"intend[] to speak to [him] any further about her jury service, or the
conversation she had with her father about the 'eye for an eye' section of the
Bible."  (Docket Entry 5-2 at 8.)  Pfeifer's affidavit did not describe what
additional "details" Petitioner sought from the juror.  (See id. at 7-8.)

[9] Due to her failure to return his telephone calls, Pfeifer "d[id] not
believe that [the juror's grandmother] intend[ed] to speak to [him] . . . ."
(Docket Entry 5-2 at 8.)  Pfeifer's affidavit did not describe what information
Petitioner sought from the juror's grandmother.  (See id. at 7-8.)

the search for truth about [the juror's] extrajudicial conversations with her father . . . ." (<u>Id.</u> at 3.) After citing language from two North Carolina Supreme Court decisions recognizing that North Carolina courts have authority to permit discovery in connection with post-trial proceedings, Petitioner repeated his claim that "ordering the depositions of [the juror, her father, and her grandmother] will significantly assist in the search for truth" and added that "depositions will be a more efficient means of determining the truth than at a hearing on the merits of this claim." (<u>Id.</u> at 3-4.)

Petitioner described the scope of the depositions he requested only as follows: "whether any improper or undue influence was brought to bear on [the juror] in relation to [Petitioner's] capital trial[.]" (<u>Id.</u> at 5.) The Motion for Discovery by Depositions offered no forecast of the specific questions Petitioner wished to ask the proposed deponents. (<u>See</u> <u>id.</u> at 2-5.) Nor did said Motion explain why the Court lacked a sufficient basis to rule on Claim I without deposition testimony from the juror, her father, or her grandmother. (<u>See</u> <u>id.</u>)

<u>Discussion of Claim I of Petitioner's MAR and Petitioner's Motion for Discovery by Depositions during State Trial Court Hearing</u>

During the hearing in the North Carolina Superior Court in Randolph County on October 19, 2007, the State argued that, "[s]ince the Bible itself has nothing to do with aggravators and mitigators [that a jury must apply in considering a death sentence] . . ., then when [the juror] asked for [sic] 'tell me a passage in the Bible' and was given one of the eye-for-an-eye passages, there

-8-

cannot have been any attempt to influence [the juror] because the Bible is not an external influence . . . ." (State's Ex. C1 at 16.) The State further asserted that Petitioner's affidavits did not support the view that the juror's father "tr[ied] to tell her what to decide" in Petitioner's case. (<u>Id.</u> at 17.)

Petitioner's counsel countered as follows: "Our position is that when [the juror] asked her father for guidance and her father . . . said, 'Read this section,' and she said she read the section he pointed to, that that was tantamount to expressing his opinion on what the decision should be." (<u>Id.</u> at 22.) Although Petitioner's counsel conceded that, if – without consulting her father about where to look in the Bible – the juror "had gone home and read the Bible, it wouldn't be a problem," Petitioner's counsel insisted that Claim I had merit because the juror's "father told her to read the particular section of the Bible when she asked him generally for guidance . . . ." (<u>Id.</u> at 24.)

The state trial court judge queried Petitioner's counsel about the significance of the fact that the juror's affidavit "doesn't say, 'I asked <u>my father for guidance</u> on what to do about this . . . ponderous thing I was involved in,' [but instead says] 'I asked my father <u>where I could go to the Bible for guidance</u>.'" (<u>Id.</u> (emphasis added).) Petitioner's counsel did not address the distinction identified by the state trial court, but rather responded by simply reiterating the view that because the juror's father "pointed [the juror] to a section that . . . specifically indicated that the appropriate thing to do is life for life, like

eye for eye, death for death . . . [Petitioner] could show it was an influence upon [the juror]." (<u>Id.</u> at 25.)

At that juncture, Petitioner's counsel expressed a desire "to develop these facts at a hearing." (<u>Id.</u>) He did not explain what specific development the record required, but rather repeated the assertions in Pfeifer's affidavit about the attempted follow-up interview of the juror and referenced Petitioner's filing of a Motion for Discovery by Depositions. (<u>Id.</u> at 25-26.)[10] According to Petitioner's counsel, said Motion would allow Petitioner to "flush out exactly how this – these conversations [between the juror and her father and between the juror's father and grandmother] went." (<u>Id.</u> at 26.) Petitioner's counsel did not identify what aspect of "these conversations" Petitioner wished to "flush out" or why the state trial court needed such information to rule on Claim I. (<u>See</u> <u>id.</u> at 26-27.) Instead, Petitioner's counsel concluded his argument to the state trial court as follows:

> We think [the facts in the affidavits from the juror and Pfeifer] go beyond the Bible-reading cases . . . . [I]f [the juror] had just read [the Bible], then that's – that's one thing. But her father and her grandmother being involved and pointing her to a particular section of the Bible, we believe takes us out of the line of cases that [the State] is relying on [to oppose Claim I].

(<u>Id.</u> at 27.)

---

[10] Earlier in the hearing, Petitioner's counsel – in apparent response to a comment by the State about the absence of evidence that the juror's father "knew what case [the juror] was on" (State's Ex. C1 at 17) – asserted that Petitioner "could flush that out . . . at a hearing or either at depositions" (<u>id.</u> at 22). Petitioner's counsel, however, made clear that he did not perceive information about the juror's father's knowledge of the identity of the specific capital defendant as necessary to the resolution of Claim I. (<u>See</u> <u>id.</u>)

Near the end of the hearing, after discussion of other issues related to Petitioner's MAR (<u>see</u> <u>id.</u> at 27-125), the state trial court judge asked about "[a]nything else . . . we need to do today?" (<u>Id.</u> at 125.) Petitioner's counsel brought up "the motion for discovery by depositions" and asked if the state trial court "want[ed] to reserve ruling on that until [it] rule[d] on the State's motion [to deny Claim I on the pleadings] . . . ." (<u>Id.</u>) Before relinquishing the floor, Petitioner's counsel stated:

> [T]he basis for our motion [for discovery by depositions] is that we send [sic] an investigator out to speak to [the juror]. We've spoken to her one time. <u>We would like to find out exactly which eye-for-an-eye section he – her father pointed her to.</u> She won't speak to us anymore.
>
> I mean, these are things that we can do in a hearing. We certainly could ask her these questions at a hearing, but in the absence of the power to compel these folks to answer our questions, we've not been able to get all the answers that we were looking for.

(<u>Id.</u> at 125-26.)

At that point, the state trial court judge asked Petitioner's counsel if the juror and her father "characterized" the Bible passage at issue as an "eye for eye" passage (<u>id.</u> at 126) and Petitioner's counsel answered as follows:

> Yes, sir. That's how [the juror] characterized it originally in her affidavit . . . . [Her father] directed her to a passage in the Bible that contained 'an eye for an eye.' And so our initial affidavit is . . . nonspecific [about which 'eye for an eye' passage from the Bible the juror's father cited] and we've – we've sent back Mr. Pfeifer to speak to [the juror] again, and that's been unavailing; his attempts to contact her grandmother have been unavailing. He has spoken to her father on one occasion.
>
> But we would like to have the opportunity to ask these folks questions under oath limited specifically to the

-11-

narrow issue of whether there was any improper or undue influence exerted upon [the juror] through these conversations.

(<u>Id.</u>)  The state trial court judge noted that a ruling granting the State's motion to deny Claim I on the pleadings would render moot Petitioner's Motion for Discovery by Depositions.  (<u>Id.</u> at 127.)

<u>Disposition in the State Courts of Claim I of</u><br>
<u>Petitioner's MAR and his Motion for Depositions by Discovery</u>

By order dated February 4, 2008, the North Carolina Superior Court in Randolph County granted the State's motion to deny Claim I of Petitioner's MAR on the pleadings and denied Petitioner's Motion for Discovery by Depositions as follows:

<u>CLAIM I</u>

The Court makes the following findings:

1.  In claim I, [Petitioner] presents the affidavit of [a] juror . . . who averred <u>inter alia</u> that she had lunch with her father prior to sentencing deliberations at [Petitioner's] trial and requested her father to direct her to a Bible passage to help in dealing with her sentencing decision.  The juror's father directed her to one of the "eye for an eye" passages in the Bible.  That night [said juror] read the passage:  it helped her sleep better but did not make her sentencing decision any easier.  On this basis, [Petitioner] claims that [the juror] was subjected to an improper external influence by her father in violation of the Sixth Amendment.

2.  The Fourth Circuit Court of Appeals has determined that the Bible does not constitute an improper external influence in a capital case, whether read aloud by one juror to the others during sentencing deliberations, <u>Robinson v . Polk</u>, 438 F. 3d 350 (4th Cir.), <u>reh'g denied en banc</u>, 444 F.3d 225 (4th Cir.), <u>cert. denied</u>, ___ U.S. ___, 127 S. Ct. 514, 166 L. Ed. 2d 383 (2006), <u>Lynch v. Polk</u>, ___ F.3d ___, 2006 U.S. App. LEXIS 27193 (4th Cir. 2006) (unpublished), <u>cert. denied</u>, ___ U.S. ___, 127 S. Ct. 3021, 168 L. Ed. 2d 741 (2007); whether read by a juror in the privacy of his home, <u>Billings v. Polk</u>, 441 F. 3d 238 (4th Cir. 2006), <u>cert. denied</u>, ___ U.S. ___, 127 S. Ct. 932, 166 L. Ed. 2d 716 (2007); or whether read to herself by a juror during

deliberations, <u>Lenz v. Washington</u>, 444 F. 3d 295, 311-312 (4th Cir.), <u>cert. denied</u>, ___ U.S. ___, 127 S. Ct. 10, 165 L. Ed. 2d 992 (2006).

> 3.  Moreover, [Petitioner] presented no evidence that [the juror's] father knew what case [the juror] was sitting on, and no evidence that he deliberately attempted to influence her vote by directing her to a specific passage in the Bible.  Instead, [Petitioner] presented a motion for depositions of [the juror], her father, and her grandmother.
>
> Based on the foregoing, the Court makes the following conclusions of law:
>
> 1.  As a matter of federal constitutional law, as explained in the Fourth Circuit decisions cited above, [Petitioner's] claim is without merit.
>
> 2.  [Petitioner's] motion for depositions of [the juror], her father, and her grandmother is DENIED.
>
> 3.  The State's motion to deny claim I on the pleadings is ALLOWED.

(Docket Entry 6-1 at 5-7.)

After additional proceedings and rulings by the state trial court denying other claims within Petitioner's MAR (and amendments thereto) (<u>see</u> Docket Entry 6-3), Petitioner sought further review in the North Carolina Supreme Court, including as to Claim I of his MAR and his Motion for Discovery by Depositions (<u>see</u> State's Ex. CC at 53-62),[11] which that court summarily denied, <u>State v. Hurst</u>, 364 N.C. 244, 698 S.E.2d 664 (2010).

### Proceedings in this Court

On September 20, 2010, Petitioner (through counsel) commenced the instant federal case by filing a Petition under 28 U.S.C.

---

[11] State's Exhibit CC consists of Petitioner's Petition for Writ of Certiorari to the North Carolina Supreme Court dated June 22, 2009, and appears only in this Court's paper file.

§ 2254 challenging his conviction and sentence. (Docket Entry 1.)
The State answered and moved for summary judgment. (Docket Entries
16, 17.) Petitioner responded to the State's summary judgment
motion (Docket Entries 22-24) and filed the instant Motion for
Leave to Conduct Discovery (Docket Entry 25), in which he seeks "to
conduct depositions of [the juror], her father, . . . and [her]
grandmother" (id. at 1).

## DISCUSSION

### Identification of the Legal Standard

"Unlike other civil litigants, a § 2254 habeas petitioner 'is
not entitled to discovery as a matter of ordinary course.'"
Stephens v. Branker, 570 F.3d 198, 213 (4th Cir. 2009) (quoting
Bracy v. Gramley, 520 U.S. 899, 904 (1997)), cert. denied, 130
S. Ct. 1073 (2010). Instead, to conduct discovery, a habeas
petitioner "must provide reasons for the request," Rule 6(b), Rules
Governing Sect. 2254 Proceedings, that establish "good cause," Rule
6(a), Rules Governing Sect. 2254 Proceedings. "A showing of good
cause must include specific allegations suggesting that the
petitioner will be able to demonstrate that he is entitled to
habeas corpus relief." Stephens, 570 F.3d at 204.

Moreover, the United States Supreme Court recently made clear
that, "[a]lthough state prisoners may sometimes submit new evidence
in federal court, [the Antiterrorism and Effective Death Penalty
Act of 1996's (the "AEDPA's")] statutory scheme [as codified in
§ 2254] is designed to strongly discourage them from doing so."

<u>Cullen</u>, 131 S. Ct. at 1401 (emphasis added).  In this regard, if a state prisoner's petition under § 2254:

> includes a claim that has been "adjudicated on the merits in State court proceedings" . . . that [petition] "shall not be granted with respect to such a claim unless the adjudication of the claim":
>
> > "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

<u>Id.</u> at 1398 (quoting 28 U.S.C. § 2254(d)) (internal brackets and ellipses omitted).  "This is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."  <u>Id.</u> (internal citations and quotation marks omitted).[12]

In light of that principle, the <u>Cullen</u> Court held that, "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on <u>the record that was before that state court</u>."  <u>Id.</u> at 1400 (emphasis added).  Because "§ 2254(d)(2) includes the language 'in light of the evidence presented in the State court proceeding,'" the restriction of federal review under that provision to the state court record applies with "additional clarity."  <u>Id.</u> at 1400 n.7.  Thus, any new evidence unearthed during discovery in federal court and "later introduced in federal

---

[12] "Section 2254(d) applies even where there has been a summary denial [of the claim in state court]."  <u>Cullen</u>, 131 S. Ct. at 1402.

court is irrelevant to § 2254(d)(1) [and (2)] review," id. at 1400. In other words, if the state trial court adjudicated Claim I of Petitioner's MAR on the merits, such that Petitioner must satisfy the terms of § 2254(d), "good cause" does not exist for the discovery Petitioner seeks (at least prior to the analysis required under § 2254(d)[13]), because this Court may look only to the state court record in applying § 2254(d).

As the foregoing discussion indicates, "not all federal habeas claims by state prisoners fall within the scope of § 2254(d), [because that subsection] applies only to claims 'adjudicated on the merits in State court proceedings.'" Id. at 1401. However, even absent an adjudication on the merits in state court that would trigger deferential review under § 2254(d), another of the AEDPA's provisions codified in "§ 2254(e)(2) still restricts the discretion of federal habeas courts to consider new evidence when deciding claims that were not adjudicated on the merits in state court." Id. (emphasis added). Under § 2254(e)(2):

> If [a state prisoner] has failed to develop the factual basis of a claim in State court proceedings, the [federal] court shall not hold an evidentiary hearing on the claim unless the [state prisoner] shows that --
>
> (A) the claim relies on --

---

[13] Even if this Court ultimately determined that the state court's determination of Claim I fell short under § 2254(d), it could grant Petitioner relief only after applying the harmless error analysis set forth in Brecht v. Abrahamson, 507 U.S. 619, 623 (1993). See Bauberger v. Haynes, 632 F.3d 100, 103-05 (4th Cir. 2011) (citing, inter alia, Fullwood v. Lee, 290 F.3d 663, 678-83 (4th Cir. 2002)). Conceivably, after Cullen, the Court could look outside the state court record to perform that function, provided Petitioner satisfied the requirements of § 2254(e)(2). See generally Hearn v. Ryan, No. CV-08-448-PHX-MHM, 2011 WL 1526912 (D. Ariz. Apr. 21, 2011) (unpublished).

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (emphasis added).

"Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." <u>Williams v. Taylor</u>, 529 U.S. 420, 432 (2000). "Diligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court . . . ." <u>Id.</u> at 435.[14]  This standard "ensure[s] that federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." <u>Cullen</u>, 131 S. Ct. at 1401 (internal brackets and quotation marks omitted).

<u>Application of the Legal Standard</u>

Petitioner seeks to depose the juror in question, her father, and her grandmother. (<u>See</u> Docket Entry 25 at 1-2.)  As set forth

---

[14]  In the absence of such diligence, a prisoner (like Petitioner) who raises a claim not based on a new, retroactive constitutional rule, can secure "an evidentiary hearing [only] if efforts to discover the facts would have been in vain, <u>see</u> § 2254(e)(2)(A)(ii), and there is a convincing claim of innocence, <u>see</u> § 2254(e)(2)(B) . . . ." <u>Williams</u>, 529 U.S. at 432. Petitioner does not contend that he can meet this exception to the diligence requirement. (<u>See</u> Docket Entry 26 at 1-12; Docket Entry 41 at 1-7.)

above, see supra, pp. 14-17, Petitioner must present reasons showing "good cause" for that request and, in so doing, must overcome the elements of § 2254 that restrict this Court's authority to consider evidence outside the state court record. He has not met that burden.

As an initial matter, it appears that the state trial court adjudicated Claim I of Petitioner's MAR on the merits. (See Docket Entry 6-1 at 5-7.) Accordingly, § 2254(d) would apply and, under Cullen, this Court could not consider evidence Petitioner might uncover in discovery when evaluating the refusal of the state courts to grant him relief.[15] Alternatively, even if § 2254(d) did not govern the scope of this Court's review of Petitioner's claim

_____

[15] In conjunction with its summary judgment motion, the State has indicated its view that § 2254(d) applies to the claim at issue. (See Docket Entry 17 at 14-17; Docket Entry 18 at 8-9; Docket Entry 36 at 3.) Petitioner has countered that "the state MAR court's failure to allow factual development of this Claim through an evidentiary hearing or other discovery procedures resulted in a decision that was not 'on the merits.' Thus, a review under 28 U.S.C. § 2254(d) is not appropriate . . . ." (Docket Entry 23 at 4.) As support for this position, Petitioner relies on Winston v. Kelly, 592 F.3d 535 (4th Cir.), cert. denied, ___ U.S. ___, 131 S. Ct. 136 (2010). (See Docket Entry 23 at 4-5.) That decision may not have survived Cullen. See Cullen, 131 S. Ct. at 1417 (Sotomayor, J., dissenting) (construing majority opinion as rejecting at least part of analysis in Winston and agreeing with that aspect of majority opinion); Atkins v. Clarke, ___ F.3d ___, ___, 2011 WL 1419127 (1st Cir. 2011) (declining to follow at least part of Winston because of Supreme Court's intervening ruling in Cullen). Further, although the Winston Court ruled that, "when a state court forecloses further development of the factual record . . . [and] the record ultimately proves to be incomplete, deference to the state court's judgment [under § 2254(d)] would be inappropriate because judgment on a materially incomplete record is not an adjudication on the merits for purposes of § 2254(d)," Winston, 592 F.3d at 555-56, it also held that such a finding should only attach where the petitioner satisfied the "exacting burden[]" of "diligently develop[ing] the record in state court," which it implied required more than simply having asked in conclusory fashion for an evidentiary hearing in state court, id. at 556-57. Accordingly, to come within the reach of Winston (and thus to avoid application of § 2254(d)), Petitioner must prove that the state court improperly denied him an opportunity to develop the factual record in the face of well-supported requests and that he exercised due diligence in gathering available information, requirements that mirror the standard under § 2254(e)(2) (which applies even if § 2254(d) does not).

-18-

regarding the communications between the juror and her father, Petitioner would have to satisfy § 2254(e)(2) (which precludes this Court's consideration of new evidence where a petitioner "failed to develop the factual basis of a claim in State court proceedings" absent a showing that the facts in question "could not have been previously discovered through the exercise of due diligence").

In his brief in support of his instant Motion, Petitioner asserted that the Court should order the depositions he requested because, "[n]otwithstanding [his development of the factual basis for Claim I in connection with his state court collateral proceedings], several issues of fact still exists [sic]" (Docket Entry 26 at 9), specifically:

> a. Which "eye for an eye" passage in the Bible did [the juror] receive from her father; and what was the exact manner in which she received it?
>
> b. What did [the juror's] father know about the case; did he follow news reports about the case; did he have an opinion about the case at the time of the improper conversation; did he know any of the law enforcement officers who investigated the case; did he know the victim; and what his feelings were about capital punishment?
>
> c. Who did [the juror's] father speak to about which passage to give his daughter and what was the substance of that conversation?
>
> d. When did the conversation between [the juror's] father and his mother about "an eye for an eye" passage in the Bible take place?
>
> e. What was [the juror's] response and reaction was [sic] after her father gave her "an eye for an eye passage" from the Bible?
>
> f. How was the specific Bible passage given to [the juror]?

-19-

g.   Who else, if anyone, knew about the improper
     communication between [the juror] and her
     father prior to the time that [the juror]
     voted to sentence the Petitioner to death, or,
     at any other time; why did they not report the
     improper communication to the [state trial
     court], court personnel, or anyone else?

h.   Why [the juror] did not immediately report her
     improper communication to the [state trial
     court], any court personnel, or anyone else;
     or why not at some other time?

i.   Whether any notes or other information about
     the improper communication exist?

j.   Where did the improper communication(s) take
     place?

k.   Was anyone else present at the time of the
     improper communication?

l.   Where and how did [the juror's] father get the
     information that he gave to [the juror]?

m.   What was the exact communication between [the
     juror] and her father; what was said between
     the two?

n.   Whether [the juror] was aware of any
     involvement of her grandmother pertaining to
     the improper communication?

(Id. at 9-10.)

    According to Petitioner's brief, "[t]hese and other related

questions have remained unanswered during the postconviction

proceedings because [he] has been denied the opportunity to further

develop evidence to clarify issues related to [Claim I of his

MAR]." (Id. at 10 (emphasis added).)[16]  In this regard, Petitioner

contends that he "has been prevented from further investigating and

---

[16] Petitioner's brief does not identify the "other related questions" that
he contends require answers before this Court can evaluate the claim at issue.
(See Docket Entry 26 at 10.)

presenting additional information by the parties who are alleged to have been parties to the misconduct[.]" (Id. (emphasis added).) The record does not support these contentions.

As documented in the Background section, see supra, pp. 6-7, Petitioner's investigator obtained an interview with and a detailed affidavit from the juror at issue, but – on his return trip to the juror's home – could not secure a follow-up meeting. The Court has difficulty concluding that the failure of the juror to come to the door on one occasion when Petitioner's investigator believed the juror was at home sufficiently establishes that the juror declined to cooperate with Petitioner's investigation, particularly given her prior cooperation. However, even assuming Petitioner has shown that the juror refused to voluntarily answer a second round of questions, nowhere in his brief does Petitioner identify any basis in the record for this Court to find that the juror's father ever declined to answer any inquiry. (See Docket Entry 26 at 1-12.)[17] Nor does Petitioner's brief – which alleges in conclusory fashion that Petitioner "exercised due diligence in investigating and presenting [Claim I of his MAR]" (id. at 10) – explain why Petitioner failed to seek answers to the above-quoted questions from the juror's father. (See id. at 1-12.)[18]

_____

[17] As set forth above, see supra, p. 7, the affidavit from Petitioner's investigator submitted to the state trial court contained no reference to any such refusal by the juror's father.

[18] It appears that the juror's father could have provided comprehensive responses to all but the queries contained in paragraphs g, h, and i of Petitioner's above-quoted list. In paragraph g, Petitioner reports a need for answers about "[w]ho else, if anyone, knew about the improper communication between [the juror] and her father prior to the time that [the juror] voted to sentence the Petitioner to death or at any other time [and] why did they not

Petitioner thus has failed to show that he "exercised due diligence in investigating and presenting [Claim I in the state trial court]" (id. at 10), at least as to the matters on which he now seeks discovery, because the record contains no evidence that Petitioner lacked the ability to obtain the information in question from the juror's father without the assistance of the state trial court. See Ward v. Hall, 592 F.3d 1144, 1160 (11th Cir. 2010) (ruling that petitioner failed to satisfy § 2254(e)(2)'s diligence standard where he "present[ed] no evidence suggesting that the material that he now seeks to present [in federal court] was not

---

report the improper communication to the [state trial court], court personnel, or anyone else?" (Id. at 9.) Petitioner's brief does not explain the relevance of such information to Claim I of his MAR. (See id. at 10-12.) As documented above, see supra, pp. 2-5, 9-11, Petitioner has taken the position that Claim I turns on whether the juror's father conveyed his personal view that the juror should vote for the death penalty to the juror in a manner that infringed Petitioner's federal constitutional right to have an impartial jury decide his sentence based on proper evidence and argument from his trial. The question of whether others had knowledge of any such communication between the juror and her father and of why any such person failed to report that knowledge does not have any easily-discernible connection to the particular constitutional claim Petitioner has presented and the Court declines to speculate about that subject. See generally Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988) ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly or else forever hold its peace." (internal citations and quotation marks omitted)). As to the inquiries in paragraph h regarding the juror's reason for failing to report her own "improper communication" with her father, one reasonably could infer that the juror either failed to view her communication with her father as something improper she should disclose or, having perceived her communication with her father as improper, wished not to deal with the fallout from disclosing it. Given the juror's willingness to provide Petitioner's investigator with an affidavit acknowledging the event, the former inference seems more plausible. In any event, neither alternative circumstance seems particularly pertinent to the question of whether the communication at issue deprived Petitioner of his right to a sentencing verdict rendered by an impartial jury based on evidence and argument properly adduced at trial. At a minimum, the probative value of such matters lacks sufficient clarity to justify Petitioner's failure to provide any argument on this point (see Docket Entry 26 at 10-11). See generally Rivera-Gomez, 843 F.2d at 635. Finally, although the Court recognizes that information about the existence of notes documenting the conversation between the juror and her father might assist Petitioner in pursuing the claim at issue, Petitioner has not explained why he could not get an adequate account of the exchange between the juror and her father from the juror's father. (See id.)

available [for him to submit to the state court]"); <u>Burton v.</u>
<u>Terrell</u>, 576 F.3d 268, 273 (5th Cir. 2009) ("[The petitioner] was
not diligent in developing the factual record . . . because he
neither claimed nor demonstrated that [the new evidence on which he
seeks to rely in federal court] could not [have] be[en] obtained
absent an order for discovery or a hearing [in state court]."
(internal quotation marks omitted)); <u>Cannon v. Mullin</u>, 383 F.3d
1152, 1176-77 (10th Cir. 2004) (affirming denial of evidentiary
hearing in federal court where petitioner did not explain his
failure to present "readily available" evidence in state court).

    In addition, the record (detailed in the Background section,
<u>see</u> <u>supra</u>, pp. 2-12) reflects that – with one exception –
Petitioner did not notify the state trial court that, to adequately
present his claim, he needed answers to any of the questions listed
in his instant Motion.  In his MAR, Petitioner solicited (as an
alternative to an outright grant of relief) "an evidentiary hearing
to resolve any factual dispute" (Docket Entry 2-1 at 9), but did
not identify any potential such dispute (<u>id.</u> at 5-9).  Petitioner's
reply to the State's motion for judgment on the pleadings requested
a hearing, but cited only clarification of whether the juror's
father referred the juror to a passage in the Old or the New
Testament as an issue "warrant[ing] factual development at a
hearing." (State's Ex. O at 2-3.)  Pfeifer's affidavit did not
describe the questions he intended to pose to the juror (in the
never-completed follow-up interview) or to the juror's grandmother
(had she returned his telephone messages). (<u>See</u> Docket Entry 5-2

at 7-8.) Nor did Petitioner's Motion for Discovery by Depositions otherwise outline anticipated queries. (See id. at 2-5.) Finally, during the hearing before the state trial court, Petitioner's counsel referenced only one specific evidentiary gap he wished to fill via discovery (i.e., "which eye-for-an-eye section [the juror's] father pointed her to"). (State's Ex. C1 at 125.)

Accordingly, apart from the question of whether the juror's father referred the juror to one of three "eye-for-an-eye" passages from the Old Testament (all of which Petitioner contends convey the same meaning (see State's Ex. O at 3)) or to the New Testament passage that arguably juxtaposed the "eye-for-an-eye" phraseology and the "turn-the-other-cheek" language,[19] Petitioner did not present the state trial court with a request for assistance in obtaining the particular information he now claims that court wrongfully denied him. The Supreme Court has stated that, for purposes of § 2254(e)(2), "[d]iligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." Williams, 529 U.S. at 437. Given that state courts reasonably may deny conclusory demands for evidentiary hearings, federal courts construing the foregoing language from Williams have ruled that "[m]ere requests for evidentiary hearings will not suffice[.]"

_____

[19] As noted above, see supra, p. 21, Petitioner cannot demonstrate that the state trial court improperly denied him discovery or an evidentiary hearing to confirm whether the juror's father provided the juror a reference to an Old or New Testament passage, because Petitioner has failed to show that the juror's father ever declined to provide such information. Nor does the record support a finding that the state trial court rejected Claim I of Petitioner's MAR because of the possibility that the juror's father referred the juror to the New Testament passage. (See Docket Entry 6-1 at 5-7.)

-24-

Dowthitt v. Johnson, 230 F.3d 733, 758 (5th Cir. 2000); accord Cannon, 383 F.3d at 1176-77 (adopting Dowthitt's holding that "[m]ere requests for evidentiary hearings [in state court] will not suffice" to meet § 2254(e)(2)'s diligence requirement because "[a]n evidentiary hearing is not the only means to accomplish the task" of satisfying § 2254(e)(2)'s demand that a petitioner "'develop the factual basis of a claim'").[20]

In this case, Petitioner asked for an evidentiary hearing and discovery in the state trial court, but he did so in a fashion that failed to apprise that court in a meaningful way about what information he needed judicial compulsion to obtain. This Court declines to find fault with the state trial court's failure to order discovery or an evidentiary hearing as to the specific, above-quoted questions in paragraphs a-n of Petitioner's brief in support of his instant Motion for Leave to Conduct Discovery in this Court, given that the record does not reflect that Petitioner ever told the state trial court he needed answers to those specific questions to adequately present Claim I. Moreover, Petitioner failed to explain both in the state trial court and in this Court why he did not (or could not) obtain the information in question from the juror's father without discovery or a hearing.

---

[20] Although the United States Court of Appeals for the Fourth Circuit has not expressly adopted this exact position, it "ha[s] emphasized . . . [that the obligation on a petitioner to] diligently develop the record in state court [is an] exacting burden[]" and has observed that, "while requesting an evidentiary hearing from the state courts may be necessary to satisfy § 2254(e)(2)'s diligence requirement, it may not always be sufficient." Winston v. Kelly, 592 F.3d 535, 556-57 (4th Cir.) (quoting and placing emphasis on "at a minimum" phrase from Supreme Court's statement in Williams, 529 U.S. at 437), cert. denied, ___ U.S. ___, 131 S. Ct. 136 (2010).

Under these circumstances, this Court finds insufficient diligence to satisfy § 2254(e)(2), as another court in the Fourth Circuit recently did when it confronted an analogous situation:

> [The petitioner] argues that because he made requests for evidentiary hearings, funding for investigators, and discovery before and during state habeas proceedings, he was diligent . . . . [He] attempts to draw parallels between the efforts deemed sufficiently diligent in Williams and the efforts he took during the state proceedings . . . . Williams did state that if the prisoner has made a reasonable effort to discover the claims to commence or continue state proceedings through requests for investigators and expert services denied in the state proceedings, § 2254(e)(2) will not bar him from developing them in federal court. However, [the petitioner] ignores the fact that in his state habeas case he did have at least one investigator who met with [the witness on whose testimony the petitioner now seeks to rely in federal court] several times. [The petitioner] had full access to [this witness] and there is nothing in [the petitioner's filings] explaining why he was unable to [present the information in question] during the state court proceedings. Therefore, I find that [the petitioner] was not diligent in developing his [instant] claim under Williams.

Bell v. True, 413 F. Supp. 2d 657, 682, 684-85, 688-89 (W.D. Va. 2006) (internal citations and quotation marks omitted), aff'd sub nom. on other grounds, Bell v. Kelly, 260 Fed. Appx. 599 (4th Cir.), cert. granted in part, 553 U.S. 1031, and cert. dismissed as improvidently granted, 555 U.S. 55 (2008); see also id. at 684-85 ("find[ing] that [petitioner's] efforts fall short of . . . Williams diligence standard . . . [where petitioner] did seek discovery and resources for more investigation during state habeas proceedings . . . [but had] never been denied access to [witness whose testimony petitioner sought to use as support for federal habeas claim]"), 688-89 (rejecting petitioner's "argu[ment] that he was diligent in developing all of these claims in state court based

-26-

on his requests for discovery, investigatory assistance, and evidentiary hearings . . . [where petitioner] had free access to all of these witnesses during the state proceedings").

CONCLUSION

The Supreme Court has construed § 2254 as "strongly discourag[ing]" the presentation of new evidence in federal court. Cullen, 131 S. Ct. at 1401. In so doing, the Supreme Court has limited review under § 2254(d) to the state court record and has emphasized that § 2254(e)(2) restricts consideration of new evidence even when § 2254(d) does not apply. See id. In this case, it appears that § 2254(d) governs this Court's review of the state trial court's ruling on Claim I of his MAR. Even if it does not, Petitioner has failed to show that he met § 2254(e)(2)'s diligence requirement. As a result, Petitioner has not established good cause for this Court to order the depositions he seeks.

**IT IS THEREFORE ORDERED** that Petitioner's Motion for Leave to Conduct Discovery (Docket Entry 25) is **DENIED**.

/s/ L. Patrick Auld<br>
**L. Patrick Auld**<br>
**United States Magistrate Judge**

June 1, 2011