IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JASON WAYNE HURST,                  )
                                    )
            Petitioner,             )
                                    )
    v.                              )            1:10CV725
                                    )
KENNETH LASSITER,                   )
Warden, Central Prison,             )
Raleigh, North Carolina,            )
                                    )
            Respondent.[1]          )


<u>**MEMORANDUM OPINION AND ORDER**</u>

THOMAS D. SCHROEDER, District Judge.

Petitioner Jason Wayne Hurst ("Hurst" or "Petitioner") brings this habeas proceeding under 28 U.S.C. § 2254, challenging his conviction and death sentence resulting from the 2002 murder of Daniel Lee Branch. Respondent's motion for summary judgment (Doc. 17) was referred to the United States Magistrate Judge, who entered a Recommendation to grant summary judgment in favor of Respondent and deny the petition (Doc. 53 ("Recommendation")). The Recommendation was filed with the court in accordance with 28 U.S.C. § 636(b) and, on September 7, 2012, was served on the parties in this

---

[1]  Plaintiff's petition originally named Gerald Branker, Warden, Central Prison, Raleigh, North Carolina, as Respondent. (<u>See</u> Doc. 1 at 2.) Kenneth Lassiter has now replaced Mr. Branker as Warden of Central Prison, Raleigh, North Carolina, and is accordingly substituted for Gerald Branker as the proper Respondent. <u>See</u> Fed. R. Civ. P. 25(d).

action.  (Doc. 54.)  Petitioner objected to the Recommendation (Doc. 55), and Respondent filed a Response (Doc. 57).  Petitioner has also moved to stay consideration of his petition pending the exhaustion of a post-conviction claim he has filed in state court under the North Carolina Racial Justice Act, N.C. Gen. Stat. §§ 15A-2010 _et seq._ as amended ("RJA").  (Doc. 59.)

For the reasons set forth below, the motion to stay will be denied, the Recommendation will be adopted, the motion for summary judgment will be granted, and the petition will be denied.

## I.   BACKGROUND

The facts of Hurst's case are set forth in the Recommendation, quoting State v. Hurst, 360 N.C. 181, 624 S.E.2d 309 (2006), and the state court collateral proceeding, and need not be repeated here. Specific facts relevant to Hurst's objections will be set forth below, as appropriate.

Although Hurst's habeas petition raised thirteen specific challenges concerning his state court conviction, he objects to the Recommendation's conclusions as to the following claims: (1) a juror's alleged improper contact with her father during sentencing deliberations (Claim I); (2) ambiguity in the jury verdict, improper jury polling, and ineffective assistance of counsel relating to the same (Claims III, IV, and V); (3) presence of an allegedly prejudicial

2

newspaper article in the jury room (Claim IX); (4) a jury instruction regarding an aggravating factor (Claim X); and (5) defects in the indictment (Claims XII and XIII). Petitioner objects to Claims X, XII, and XIII "for preservation purposes only." (Doc. 55 at 19.)

All objections have been carefully reviewed, and those warranting discussion are addressed below. As a preliminary matter, however, the court must address Petitioner's request to stay further consideration of his petition.

## II. SECOND MOTION TO STAY AND HOLD PETITION IN ABEYANCE

Petitioner has filed a Second Motion to Stay and Hold in Abeyance Petitioner's Habeas Corpus Petition ("Second Motion to Stay"), which seeks stay and abeyance pending the state court's resolution of an Amended Motion for Appropriate Relief ("AMAR") filed pursuant to the RJA (hereinafter "RJA AMAR"). (Doc. 59.) A determination whether to stay a habeas case rests in the district court's sound discretion. Rhines v. Weber, 544 U.S. 269, 276 (2005) (addressing "mixed petitions" in which exhausted and unexhausted petition claims are presented to the habeas court).

Petitioner previously filed a motion to stay his petition pending an August 10, 2010 state Motion for Appropriate Relief ("MAR") predicated on a claim under the RJA. (Docs. 29, 30 at 3.) This court denied the requested stay on May 18, 2011, on several

3

grounds. (Doc. 48.) Among the reasons was that if Petitioner lost his RJA MAR, the decision, which would be predicated solely on North Carolina law, would not be cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also Kandies v. Branker, No. 1:99CV764, 2011 WL 1328860, at *13 n.5 (M.D.N.C. Apr. 5, 2011)(Dixon, M.J.)(Recommended Ruling)(agreeing that this court "is not the proper forum for a claim under the RJA"). If Petitioner were to win his RJA MAR, on the other hand, it would affect only his sentence, and the court will nevertheless be required to address his claims seeking to vacate his conviction.

Petitioner now asserts that resolution of the RJA AMAR prior to the conclusion of this court's habeas proceeding will serve judicial economy and would not frustrate the purposes of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). (Doc. 60 at 4.) He posits that the "primary issue" before the court is Claim I (the propriety of a juror's communication with her father during the sentencing stage), which would be mooted by the granting of a life sentence if he wins relief on his state RJA AMAR. (Id. at 4-5.)

But as explained in detail in this court's prior order denying the first motion to stay, further delay would frustrate AEDPA's goal of finality and not serve judicial economy. As to delay, the Supreme Court has cautioned that stay and abeyance, "if employed too

4

frequently, has the potential to undermine" the twin purposes of AEDPA: (1) reducing delays in the execution of state and federal criminal sentences, particularly in capital cases; and (2) encouraging petitioners to seek relief from state courts before bringing claims to federal court. <u>Rhines</u>, 544 U.S. at 276-77. As for judicial economy, Hurst's petition was filed on September 20, 2010, the parties have fully briefed Respondent's summary judgment motion, the Magistrate Judge has issued a thorough Recommendation, and Petitioner's objections have been filed and addressed by Respondent. Thus, all matters necessary for this court's review are in place. Yet, there is no evidence that as of today the RJA AMAR will be resolved anytime soon. (Doc. 60 at 4.) It would not serve the interests of judicial economy to indefinitely stay and hold this habeas proceeding in abeyance in light of the advanced posture of the case.

Further, as noted previously, not all petition claims would be rendered moot should Petitioner obtain the relief he seeks in his RJA AMAR. The court must still decide issues related to his challenge to his underlying conviction.

Petitioner notes that since the denial of his first motion, the United States Court of Appeals for the Fourth Circuit reversed two district court decisions that declined to order stays in cases in

which RJA claims were pending in state court, and the Fourth Circuit stayed a third case. (Doc. 60 at 1-2, 5; see Docs. 60-3, 60-4, Doc. 63.) The Fourth Circuit decisions are summary orders issued by the Clerk of Court, without explanation, in cases that were already on appeal. Thus, they provide no direct guidance as to the reasons they were entered other than that the court granted relief "[u]pon consideration of the submissions relative to the motion . . . ." However, in one of the cases, Harden v. Lassiter, No. 11-8 (4th Cir.), the petitioner raised a Batson claim in his habeas proceeding as well as in his state court RJA claim. Id., Doc. 46. In another case, Forte v. Lassiter, No. 12-3 (4th Cir.), the petitioner asserted a Batson claim and, separately, filed a Batson claim in state court pursuant to the RJA. Id., Doc. 18-1 at 2, 5. As to both cases, therefore, it appears that resolution of the jury selection claim under the RJA offers the possibility of mooting the federal jury selection claim under Batson. In contrast, Petitioner here asserts no Batson claim in his habeas proceeding. Thus, comity concerns are substantially lessened.

Petitioner nevertheless asserts that principles of comity are relevant because he may have a cognizable due process claim if he is denied relief on his RJA AMAR and, further, has asserted various federal constitutional claims in his RJA AMAR. (Doc. 60 at 5.)

6

Respondent argues that the RJA AMAR involves state law issues only and that any federal constitutional claims would be procedurally barred for failure to have raised them on direct appeal or in the original MAR brought prior to enactment of the RJA. (Doc. 61 at 5.) Comity is assuredly a consideration for this court. But such a concern, when balanced against all the other considerations discussed, fails to warrant further delay to await another state court decision as to whether Petitioner might have a cognizable claim at some undetermined point in the future.

Because Respondent's summary judgment motion is ripe for final disposition by this court and Petitioner has already filed one MAR with the state court, the Second Motion to Stay will be denied.

## III. OBJECTIONS

This court reviews timely objections to the Magistrate Judge's Recommendation *de novo*. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). In the absence of an objection, the court reviews the Recommendation for clear error. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

Absent either cause and prejudice or a fundamental miscarriage of justice, a federal habeas court may not review constitutional claims when a state court has declined to address the claims based on an adequate and independent state procedural rule. Harris v.

<u>Reed</u>, 489 U.S. 255, 262 (1989). One adequate and independent state procedural rule is N.C. Gen. Stat. § 15A-1419(a)(3), which provides that when a defendant was in a position to adequately raise a ground or issue underlying a state court collateral motion for appropriate relief upon a previous appeal but has failed to do so, the failure provides a ground for the denial of the motion for appropriate relief, including a motion filed in a capital case. "A federal habeas court 'does not have license to question a state court's finding of procedural default' or to question 'whether the state court properly applied its own law.'" <u>Sharpe v. Bell</u>, 593 F.3d 372, 377 (4th Cir. 2010) (quoting <u>Barnes v. Thompson</u>, 58 F.3d 971, 974 n.2 (4th Cir. 1995)). Rather, "[t]he federal court may only inquire into whether cause and prejudice [or a fundamental miscarriage of justice] exist to excuse that default, not into whether the state court properly applied its own law." <u>Barnes</u>, 58 F.3d at 974 n.2 (bracketed material added).

Further, AEDPA "restricts the circumstances under which a federal habeas court may grant relief to a state prisoner whose claim has already been 'adjudicated on the merits.'" <u>Johnson v. Williams</u>, -- U.S. --, 133 S. Ct. 1088, 1091 (2013) (citing 28 U.S.C. § 2254(d)). The requirements of 28 U.S.C. § 2254(d) establishes "a difficult to meet and highly deferential standard" of review "which demands that

8

state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, -- U.S. --, 131 S. Ct. 1388, 1398 (2011) (internal quotation marks and citation omitted). Thus, the scope of review "in cases on collateral review [of] a state court proceeding that adjudicated a claim on the merits is both deferential and highly constrained." Golphin v. Branker, 519 F.3d 168, 216 (4th Cir. 2008). In cases when section 2254(d) applies, a federal court may grant a petition only if it determines that the underlying state court decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Jackson v. Johnson, 523 F.3d 273, 276 (4th Cir. 2008)(citing 28 U.S.C. § 2254(d)(1)). Hurst bears the burden of proof with respect to section 2254(d). Pinholster, 131 S. Ct. at 1398. A state court unreasonably applies federal law when it "identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." Williams v. Taylor, 529 U.S. 362, 413 (2000) (opinion of O'Connor, J., for the Court); see Pinholster, 131 S. Ct. at 1399 (quoting Williams). A state court's factual determinations, meanwhile, are presumed to be correct absent "clear and convincing evidence" to the contrary. 28 U.S.C. § 2254(e)(1); Miller-El v. Dretke, 545 U.S. 231, 240 (2005).

With these principles in mind, the court turns to Petitioner's

objections.

**A.  Claim I (Juror's Contact with Her Father)**

Hurst's first claim asserts that he "was denied the right to confront his accusers, to a fair and impartial jury, and to due process of law where a juror consulted with her father during the sentencing deliberations about her decision as to whether to vote for life or death."  (Doc. 1-1 at 2 (capitalization omitted).)  This claim was raised by Hurst before the North Carolina Superior Court in his MAR proceeding, where he asserted that "[t]he communication between [the juror] and her father, in which he directed her to the 'eye for an eye' passage in the Bible . . . constituted an improper external influence. . . . By suggesting that she seek guidance in the 'eye for an eye' passage, her father implied what her decision should be - death."  (Doc. 2-1 at 6-7.)

In preparing for the MAR proceeding, Hurst's counsel obtained an affidavit from the juror in question.  The relevant portion of the affidavit reads:

> During the trial, I often had lunch with my father who worked near the courthouse.  Prior to deliberations, I asked [him] where I could look in the Bible for help and guidance in making my decision for [sic] between life and death.  After the jury had found [Petitioner] guilty but before we decided his sentence, I opened my Bible at home because I wanted to read something to help me with my decision.  My father had given me the section in the Bible where I could find "an eye for an eye."  That night after

10

> reading that section in the Bible, it helped me sleep
> better.  It didn't make the decision any easier.  The next
> day during deliberations, I voted for the death penalty.

(Doc. 4-1 at 5.)

The MAR court denied Claim I (Doc. 6-1 at 5-7), and the North Carolina Supreme Court summarily denied further review, <u>State v. Hurst</u>, 364 N.C. 244, 698 S.E.2d 664 (2010).  The Magistrate Judge presented a thorough review of the MAR proceeding in the Recommendation (Doc. 53 at 11-20) and in his June 1, 2011 Memorandum and Order regarding Petitioner's Motion for Leave to Conduct Discovery (Doc. 49 at 2-12), which this court affirmed (Doc. 52).

The Magistrate Judge recommended that Petitioner's request for relief on Claim I be denied because Hurst "failed to show that the state superior court's decision to reject this same claim on the merits was contrary to or an unreasonable application of federal law (as determined by the United States Supreme Court) or was based on an unreasonable determination of the facts presented to the state superior court."  (Doc. 53 at 11.)  In response to the Recommendation, Hurst lodges general objections and fourteen specific objections as to this claim, which the court has reviewed. Among the arguments is Petitioner's contention that the MAR court's decision was not a decision on the merits, which requires the court's initial attention.

11

## 1. Whether Claim I Was Adjudicated on the Merits

Hurst objects to the Recommendation's application of the deferential 28 U.S.C. § 2254(d) analysis to Claim I and contends this court must undertake a *de novo* review. He asserts that contacts and communications between one of the jurors and her father were not innocuous or *de minimis* but presumptively prejudicial according to clearly established United States Supreme Court precedent, including Mattox v. United States, 146 U.S. 140 (1892), and Remmer v. United States, 347 U.S. 227 (1954). (Doc. 55 at 2.) Hurst argues that the MAR court did not address application of Remmer and other cases involving improper jury contacts but instead erroneously rejected Claim I based on Fourth Circuit opinions limited to Bible reading. As a result, Hurst concludes, the MAR court never addressed the claim presented, "i.e., whether the private contacts and communications between [the juror] and her father about her sentencing decision were unauthorized and created the possibility that she was influenced by them," and thus the MAR court's ruling was not "on the merits." (Id. at 4.) As such, Petitioner asserts, the MAR court's decision is not entitled to deference and this court must review Claim I *de novo*. (Id. at 5.)

Petitioner's contentions lack merit. "Whether a claim has been adjudicated on the merits is a case-specific inquiry" and depends

on "any relevant factual findings made by the state courts." Winston
v. Pearson, 683 F.3d 489, 500-01 (4th Cir. 2012) ("Winston II"), cert.
denied, -- U.S. --, 2013 WL 656182 (Feb. 25, 2013) (discussing holding
in Winston v. Kelly, 592 F.3d 535 (4th Cir. 2010) ("Winston I")).
As noted in the Recommendation, the MAR court specifically
acknowledged that Petitioner asserted "that [a juror] was subjected
to an improper external influence by her father." (Doc. 6-1 at 5.)
The MAR court, therefore, recognized the issue presented by Hurst
but found that he had presented "no evidence that [the juror's] father
knew what case [the juror] was sitting on, and no evidence that he
deliberately attempted to influence [the juror's] vote by directing
her to a specific passage in the Bible." (Id. at 6.) The MAR court
then denied the claim on the pleadings. (Id. at 7.)

A claim is "adjudicated on the merits" under section 2254(d)
if there is "a decision finally resolving the parties' claims, with
res judicata effect, that is based on the substance of the claim
advanced, rather than on a procedural, or other, ground." Muth v.
Frank, 412 F.3d 808, 815 (7th Cir. 2005) (quoting Sellan v. Kuhlman,
261 F.3d 303, 311 (2d Cir. 2001)). By this measure, Claim I was
adjudicated on the merits.[2]

---

[2]  As shall be seen, the MAR court considered the applicable Remmer factors,
although not referencing the case.  A state court is not required to cite

Hurst argues that the MAR court denied him an opportunity to develop facts supporting his claim which, he contends, requires this court to find Claim I was not adjudicated on the merits under Winston II, 683 F.3d at 496. (Doc. 55 at 8.) The Fourth Circuit in Winston II described Winston I as holding that a state court decision might not be deemed an adjudication on the merits for purposes of section 2254(d) if diligent counsel was unable to complete the state court record because the "state court unreasonably refuses to permit further development of the facts of a claim." 683 F.3d at 496 (quotation marks omitted). The court cautioned, however, that "[l]est our holding be viewed as a pliable safety valve for habeas petitioners, we reiterate[] that 'the requirements that petitioners exhaust their state remedies and diligently develop the record in state court are exacting burdens.'" Id. at 497.

In this case, the Magistrate Judge's June 1, 2011 Memorandum and Order denied Petitioner's request for discovery in the habeas proceeding (Doc. 49), a decision this court affirmed (Doc. 52). The

to federal law in adjudicating a federal claim on the merits so long as neither the reasoning nor the result contradicts United States Supreme Court precedent. See Mitchell v. Esparza, 540 U.S. 12, 16 (2003). The MAR court's approach demonstrates that it did not misapprehend controlling law. The Recommendation is not, despite Hurst's claim (Doc. 55 at 6), "a post-hoc attempt to explain the ruling of the [MAR court] in terms of Remmer." Thus, Hurst's arguments relating to the application of Remmer and its progeny are properly addressed as part of the section 2254(d) analysis, an analysis undertaken by the Recommendation and this court. (See Doc. 53 at 21-29.)

Magistrate Judge noted that "to come within the reach of Winston [I] . . . Petitioner must prove that the state court improperly denied him an opportunity to develop the factual record in the face of well-supported requests and that he exercised due diligence in gathering available information, requirements that mirror the standard under [28 U.S.C.] § 2254(e)(2) (which applies even if § 2254(d) does not)." (Doc. 49 at 18 n.15.) The Magistrate Judge declined to find fault with the state trial court's failure to order discovery or an evidentiary hearing with respect to the specific questions Hurst proposed in his request for discovery because Hurst failed to exercise due diligence to satisfy section 2254(e)(2). (Id. at 25, 26.)

Winston II does not alter the analysis. As noted by the Magistrate Judge, "Petitioner did not notify the state trial court that, to adequately present his claim, he needed answers to any of the questions listed in" the discovery motion presented to the habeas court. (Id. at 23.) Specifically, "Petitioner's reply to the State's motion for judgment on the pleadings [in the MAR proceedings] requested a hearing, but cited only a clarification of whether the juror's father referred the juror to a passage in the Old or the New Testament as an issue 'warrant[ing] factual development at a hearing.'" (Id. (citing and quoting State's Ex. O at 2-3).) Nor

15

did Petitioner's motion for deposition discovery before the MAR court outline any anticipated inquiries but simply requested depositions on the issue of whether any improper undue influence was brought on the juror. (See Doc. 5-2 at 2-5.) And, during the hearing before the MAR court, Hurst's counsel referenced only one specific evidentiary gap to be filled: "which eye-for-an-eye section [the juror's] father pointed her to." (State's Ex. C1 at 125.)

The same considerations which led to a finding that Petitioner had not demonstrated due diligence for purposes of satisfying section 2254(e)(2) demonstrate that the MAR court did not "unreasonably refuse[] to permit further development of facts of" this claim. See Winston II, 683 F.3d at 496. Thus, the holdings in Winston I and Winston II do not suggest that the MAR court's disposition of Claim I was other than an adjudication on the merits for purposes of section 2254(d). The Magistrate Judge's determination on this point was correct, and he therefore properly undertook a section 2254(d) review of Claim I.

### 2. Section 2254(d) Review

Hurst objects to the Recommendation on the ground that it relies unduly on a lack of proof of juror tampering, a factor identified in Remmer, for determining whether a presumption of prejudice arises based on an unauthorized communication or contact. (Doc. 55 at 9.)

16

Hurst contends that although his evidence was not conclusive as to whether the juror's father deliberately intended to influence the juror's decision, Remmer does not require such a showing and, in any event, the fact that the father provided the juror with an "eye for an eye" Bible passage suggests strongly that he did. (Id.)

The Magistrate Judge examined not only Remmer but also subsequent opinions interpreting it. Remmer held that "[i]n a criminal case, any private communication, contact, or tampering directly or indirectly, with a juror during a trial about the matter pending before the jury" is presumptively prejudicial. Remmer, 347 U.S. at 229. In United States v. Cheek, 94 F.3d 136, 141 (4th Cir. 1996), the Fourth Circuit outlined a three-step process for analyzing allegations of extrajudicial juror contact. The first step, according to the court, is that "[t]he party who is attacking the verdict bears the initial burden of introducing competent evidence that the extrajudicial communications or contacts were more than innocuous interventions." Id. (internal quotation marks omitted). Moreover, where applicable, that presumption "is not one to be casually invoked." United States v. Baptiste, 596 F.3d 214, 221 (4th Cir. 2010) (quoting Stockton v. Commonwealth of Virginia, 852 F.2d 740, 745 (4th Cir. 1988)). Thus, not all extrajudicial contacts should give rise to a presumption. Haley v. Blue Ridge Transfer Co.,

17

Inc., 802 F.2d 1532, 1537 n.9 (4th Cir. 1986) (noting that "certain kinds of extrajudicial contacts may amount to nothing more than innocuous interventions that simply could not justify a presumption of prejudicial effect"). The presumption arises only after a petitioner has established that the unauthorized contact "was of such a character as to reasonably draw into question the integrity of the verdict." Fullwood v. Lee, 290 F.3d 663, 678 (4th Cir. 2002) (quoting Stockton, 852 F.2d at 743).

Moreover, while Remmer establishes a presumption of prejudice, the presumption does not apply to the court's review under the deferential standards of 28 U.S.C. § 2254(d). United States v. Lawson, 677 F.3d 629, 644 (4th Cir. 2012) (citing Vigil v. Zavaras, 298 F.3d 935, 941 n.6 (10th Cir. 2002)), cert. denied, 133 S. Ct. 393 (2012). The question on habeas review is whether, in applying Remmer and its progeny, the state court made a determination that constituted an unreasonable application of, or was contrary to, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1).

Here, the evidence was that the juror contacted her father during the sentencing phase. Surely, a father/juror contact during a trial constitutes a private contact or communication. But meetings and discussions between family members are not expected to

18

cease for the duration of a trial simply because a family member is a juror. The important question is whether there was tampering or, even if not, whether the contact was "about the matter pending before the jury." Both were addressed by the MAR court and the Recommendation, and, contrary to Petitioner's argument, the Magistrate Judge did not rely inappropriately on only one (i.e., tampering).

As to the tampering issue, the evidence was that the juror asked her father during the deliberations of the sentencing phase "where [she] could look in the Bible for help and guidance in making [her] decision." (Doc. 4-1 at 5.) The father directed her to a portion of the Bible that recounted "an eye for an eye," although the exact passage is not in the record. (Id.) The MAR court found that Hurst had presented "no evidence that [the juror's father] deliberately attempted to influence [the juror's] vote by directing her to a specific passage in the Bible." (Doc. 6-1 at 6.) The court also found that the father did not even know what case the juror "was sitting on." (Id.) These are factual findings that are entitled to deference and presumed to be correct, absent clear and convincing evidence rebutting them. 28 U.S.C. § 2254(e)(1). Petitioner has not offered such. Nor has he demonstrated that the MAR court's decision was an unreasonable determination of the facts in light of

19

the evidence before it.  28 U.S.C. § 2254(d)(2).  To be sure, the juror herself knew what case she was sitting on, but it does not follow that her knowledge rendered her father's statement tampering.  Among other reasons, there was no evidence that the juror sought her father's opinion on *how* to vote or that her father's response expressed any view.

The closer question is whether the father's contact constituted one "about the matter before the jury" within the meaning of Remmer and its progeny.  No doubt, the father/juror discussion about the Bible verse concerned the sentencing phase of the trial, which was a matter before the jury.  But there are many cases, as cited by the MAR court, that hold that a state court did not unreasonably apply clearly established federal law in determining that a juror's consultation of the Bible or reading of Bible passages to other jurors does not constitute an extrinsic influence that would permit a challenge to the verdict.  See Robinson v. Polk, 438 F.3d 350 (4th Cir. 2006); see also Lenz v. Washington, 444 F.3d 295 (4th Cir. 2006); Billings v. Polk, 441 F.3d 238 (4th Cir. 2006); Lynch v. Polk, 204 F. App'x 167 (4th Cir. 2006) (unpublished opinion).[3]  The present

---

[3]  Unpublished decisions of the Fourth Circuit have no precedential value but are cited for the weight they generate by the persuasiveness of their reasoning.  See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006).

case is not those cases, but had the father simply said, "read the Bible," it would be much closer to them.

The United States Supreme Court has not held that the reading of a Bible verse constitutes "a matter before the jury" or raises a presumption of prejudice as an improper extrinsic influence. In light of the Fourth Circuit cases holding that, in the context of habeas review, a juror's consultation and/or recitation of Bible verses does not trigger a presumption of prejudice (indeed, does not even constitute an extrinsic influence), it cannot be said that the state MAR court's determination -- that the father's reference to an "eye for an eye" Biblical passage in this case did not give rise to a presumption of prejudice under Remmer -- was an unreasonable application of, or contrary to, federal law *as determined by the United States Supreme Court*. Accordingly, Petitioner's Claim I fails.

### 3. Remaining Objections

The court has undertaken a *de novo* review of all remaining objections to the Recommendation's discussion of Claim I and concludes they should be overruled. The court will therefore adopt the Recommendation, as modified herein, with respect to Claim I.

21

**B. Claims III (Ambiguity of Jury Verdict), IV (Improper Jury Polling), and V (Ineffective Assistance of Counsel (Unanimity/Jury Poll))**

Hurst groups objections to his claims of ambiguity of unanimity with respect to the jury verdict (Claim III), improper polling of the jury (Claim IV), and ineffective assistance of counsel with respect to the failure to allege lack of unanimity and improper polling before the state court (Claim V). (Doc. 55 at 11-15.) Eleven specific objections are raised to the Recommendation's findings and conclusion that summary judgment should be granted to Respondent on these claims.

**1. Claims III and IV**

The MAR court held that Claims III and IV were procedurally defaulted pursuant to N.C. Gen. Stat. § 15A-1519(a)(3). (Doc. 6-1 at 10, 12.) Despite Hurst's claim that section 15A-1519(a)(3) is not an adequate and independent basis which has been regularly and consistently applied by North Carolina courts (Doc. 24 at 22), the Fourth Circuit has "repeatedly held" section 15A-1419(a)(3) "to be both adequate and independent." See Sharpe v. Bell, 593 F.3d 372, 377 (4th Cir. 2010).

Many of Hurst's objections here depend upon or relate to his claim that the errors asserted in Claims III and IV are "structural errors" which, he argues, cannot be waived and require a presumption

22

of prejudice. (Doc. 55 at 11-14 (objections 1, 3, 4, 6, 7).) This is incorrect. The court concludes that, for the same reasons stated in the Recommendation, none of the alleged errors here constitutes structural error. (See Doc. 53 at 55-58, 60 n.32.) Moreover, again for the same reasons stated in the Recommendation, Claims III and IV are procedurally defaulted in this section 2254 habeas case even if the alleged errors could be viewed as structural ones. (See Doc. 53 at 53-55, 58, 60 n.32.) Federal circuit courts addressing the issue have determined that "structural errors" do not constitute an exception to the state court procedural bar doctrine or to the cause and prejudice requirement or to the miscarriage of justice analysis. (See Doc. 53 at 54-55 (collecting circuit court opinions).) The objections, the incorporated petition and Brief in Reply to Respondent's Answer and Motion for Summary Judgment ("Summary Judgment Reply") (see Doc. 55 at 11 n.8), all fail to cite contrary authority, and this court has found none.

Thus, Hurst must prove cause and prejudice, or a miscarriage of justice, for this court to review Claims III and IV *de novo*. In this regard, Hurst objects to the Recommendation's "finding in Claims III and IV that [his] assertions of counsel's ineffectiveness were conclusory." (Doc. 55 at 14 (objection 8).) The Recommendation quoted Quintero-Hernandez v. United States, No. 3:11cv285-GCM, 2011

23

WL 2447451, at *3 (W.D.N.C. June 15, 2011) (noting that "[a]lthough Petitioner asserts that his claims were not raised due to counsel's ineffectiveness, this conclusory assertion falls far short of establishing 'cause' for his procedural default"). (Doc. 53 at 58.) The Recommendation accurately characterizes the relevant portions of Hurst's petition and Summary Judgment Reply as to this claim as conclusory. (Id. (Claim III, referencing Doc. 24 at 23 (Summary Judgment Reply)); see id. at 60-61 (Claim IV, referencing Doc. 24 at 26 (Summary Judgment Reply)).)

In support of this objection, however, Hurst cites the affidavit of his North Carolina appellate counsel, Anne M. Gomez, filed in his MAR proceedings ("Gomez Affidavit"). (Doc. 55 at 14-15 (citing Doc. 4-1 at 33-34 (CM/ECF page number designation)).)[4] The Gomez Affidavit states that the affiant

> did not think about or consider the issue of the lack of
> unanimity of the jury verdict at the guilt phase as a basis
> for a claim seeking relief on appeal. In addition, I did
> not think about or consider the issue of failing to
> properly poll the jury as a basis for a claim seeking
> relief.

---

[4] Hurst did not cite this affidavit in his Summary Judgment Reply with respect to Claim III or Claim IV. (See Doc. 24 at 22-24, 27-28.) Hurst does reference the affidavit with respect to Claim V, which suggests that despite the general language of objection 8, the affidavit is intended to be limited to Claim V. (Doc. 1-1 at 66; Doc. 24 at 29.) The court, however, has considered the affidavit with respect to Claims III, IV, and V.

24

(Doc. 4-1 at 33 ¶ 5.)   The Gomez Affidavit concludes that the decision not to include assignments of error corresponding to Claims III and IV was "not strategically based."   Id.

As noted in the Recommendation, the Supreme Court has stated that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Murray v. Carrier, 477 U.S. 478, 486 (1986).   Something more is required.   Here, the Gomez Affidavit establishes only that appellate counsel failed to recognize the basis for Claims III and IV.   Hurst has failed to show cause and prejudice or a miscarriage of justice. The objections, therefore, are overruled, and the procedural bar applies to both Claim III and Claim IV.

### 2.   Claim V

In Claim V, Hurst asserts ineffective assistance of trial and appellate counsel for failure to raise the errors set out in Claims III and IV.   The state superior court denied this claim, which was raised in the MAR proceeding, and it is thereby not procedurally defaulted.   As acknowledged by Hurst, the claim is therefore reviewed under the deferential standard of review set out in 28 U.S.C. § 2254(d)(1) and (2).   (See Doc. 24 at 29.)

25

Hurst objects to the Recommendation's "finding in Claim V that Petitioner strung together blanket assertions." (Doc. 55 at 14-15 (citing Doc. 53 at 62, 63).) Hurst's Summary Judgment Reply, however, does just that.[5] Further, to the extent the petition alleges underlying Claim III and IV structural errors in asserting Claim V (Doc. 1-1 at 64-66), the alleged errors do not constitute "structural errors" for the reasons noted and, therefore, provide no basis for a finding of ineffective assistance of counsel. (See Doc. 53 at 64-65 (discussing cases).)

The court has undertaken an independent examination of the record and finds the adjudication of Hurst's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. See 28 U.S.C. § 2254(d). Accordingly, the objections regarding Claim V are overruled.

## C.   Claim IX (Presence of Newspaper in Jury Room)

In Claim IX, the petition alleges that the state superior

---

[5]   Hurst references the Gomez Affidavit "outlining the error" submitted with his MAR. (Doc. 55 at 15.) Hurst's earlier references to the affidavit related to Claim V. (Doc. 1-1 at 66; Doc. 24 at 29.) The limited effect of the affidavit is discussed above.

court's refusal to order a mistrial and/or failure to make a
sufficient inquiry "denied [Petitioner's] right to confront
evidence, to a fair and impartial jury, and to due process of law
because a newspaper was present in the jury room, read by potential
jurors, and discussed amongst potential jurors during jury
selection."[6] (Doc. 1 at 24; <u>see</u> Doc. 1-1 at 77-82.) Hurst raises
nine specific objections to the Recommendation's findings and
conclusion that summary judgment should be granted to Respondent on
this claim. The majority of Hurst's objections address the
Recommendation's conclusion that the deferential review set out in
28 U.S.C. § 2254(d) applies to Claim IX as well as the Magistrate
Judge's application of that review. (Doc. 55 at 15-19 (objections
1, 2, 3, 5, 6, 8).) In addition, Hurst objects to the
Recommendation's conclusion that, even if subjected to <i>de novo</i>
review, Claim IX should be denied by this court on the merits. (Doc.

---

[6] Hurst put the issue before the North Carolina Supreme Court in an
assignment of error that was worded slightly differently: "Whether Jason
Hurst is entitled to a new trial because the trial court failed to take
appropriate action when it was revealed that a juror brought a newspaper
to the jury room for three days of jury voir dire and that jurors had read
and discussed a highly prejudicial newspaper article about the case."
(Doc. 1 at 3; State's Exhibit E (Defendant-Appellant's Brief) at i, 54.)
As reflected in the assignment of error, this articulation focused on
whether "the trial judge erred by failing to make a sufficient inquiry when
there was substantial reason to fear some seated jurors had seen a highly
prejudicial newspaper article about the case." (<u>See</u> <u>id.</u> at 69.) The
underlying federal ground stated was Hurst's Sixth Amendment right to
confront the evidence against him as well as his right to a fair and
impartial jury. (<u>Id.</u> at 60, 62.)

27

55 at 18-19 (objection 9).)

Hurst argues that the Recommendation improperly relied on Harrington v. Richter, 562 U.S. --, 131 S. Ct. 770 (2011), which held that when a state court issues an order that summarily rejects without discussion all the claims raised by a defendant, the federal court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. He argues that because the North Carolina Supreme Court on direct appeal did not summarily reject all of his claims but engaged in an extended analysis that addressed only issues based exclusively on state law, it cannot be presumed to have adjudicated the merits of the federal constitutional issues related to the presence of a prejudicial newspaper article in the jury room. (Doc. 55 at 15-16 (objection 1).) He also objects to the Recommendation's conclusion that the court should presume that the state court adjudicated such claims on the merits rather than presume it did not. (Id. at 17-18 (objection 3).)

The North Carolina Supreme Court opinion summarized the underlying facts as set out in the Recommendation (Doc 53 at 81-83) and the related conclusions (id. at 84-86). See Hurst, 360 N.C. at 186-91, 624 S.E.2d at 315-18. In essence, Hurst contends that the state court's opinion only "addressed [these] issues as a matter of state law . . . . As such, no adjudication on the merits of the

28

federal claim exists, and [Claim IX] should be reviewed *de novo*."[7]
(Doc. 24 at 35.)

In support of his objections, Hurst relies on <u>Williams v.</u>
<u>Cavazos</u>, 646 F.3d 626 (9th Cir. 2011), in which the Ninth Circuit
found in the case before it that, unlike the state court summary
rejection in <u>Richter</u>, the California appellate court decision "was
*not* unaccompanied by an opinion explaining the reasons relief has

---

[7] The parties have, in part, reversed their positions on this point. As
the Recommendation notes, Hurst's summary judgment position is contrary
to that taken in his petition. (Doc. 53 at 87 n.38 (citing Doc. 1-1 at
77-78 (petition stating that Petitioner "raised this issue in his direct
appeal . . . [and] [t]he North Carolina Supreme Court found no error.")).)
Further, Hurst's petition speaks in terms of a 28 U.S.C. § 2254(d)
review, concluding that, with respect to Claim IX, "The state court's decisions,
including the failure to conduct further inquiry and the failure to conduct
a full hearing as to all of the potentially affected jurors, were
unreasonable. Moreover, the state court decision was contrary to or an
unreasonable application of clearly established Supreme Court law." (Doc.
1-1 at 82.)

On the other hand, Respondent's Answer asserts that the North Carolina
Supreme Court "dealt with the claim <u>solely</u> on the basis of state law."
(Doc. 17 at 21 (citing <u>Hurst</u> opinion).) Hurst points to a similar statement
in Respondent's Summary Judgment Brief. (<u>See</u> Doc. 24 at 35 (citing Doc.
18 at 37).) Respondent qualifies that statement, asserting that: "Even
were this not so, the supreme court also addressed in detail all the
arguments Hurst raises again before this court." (Doc. 18 at 37.) In its
Summary Judgment Reply, Respondent asserts that Hurst's direct appeal
briefing to the North Carolina Supreme Court argued the issue on the basis
of whether the trial court should have granted a mistrial. (Doc. 36 at
10 (citing Defendant-Appellant's Brief at 60-69 (State's Exhibit E)).)
Respondent also asserts that the approach taken as to whether the North
Carolina Supreme Court addressed the issue solely under state law does not
matter "because none of the jurors sitting on [Hurst's] case saw or read
the newspaper in the jury room. Accordingly, even if this court assesses
the claim as a federal constitutional matter the result will be no different
from that at which the North Carolina Supreme Court arrived." (Doc. 36
at 10-11.)

been denied; rather, the court provided a lengthy, reasoned explanation for the denial of [petitioner-defendant's] appeal, but none of those reasons addressed her Sixth Amendment claim in any fashion, even indirectly." Id. at 639 (internal quotation marks and citation omitted). The Ninth Circuit concluded that, as a result, the Richter presumption did not apply. Hurst argues that Claim IX should be analyzed under Williams rather than Richter and, as a result, a de novo review is required.

Petitioner's reliance on Williams is misplaced. After Hurst filed his objections, the United States Supreme Court reversed the Ninth Circuit's Williams decision, stating that "[w]e see no reason why this same [Richter] rule should not apply when a state court addresses some of the claims raised by a defendant but not a claim that is later raised in a federal habeas proceeding." Johnson v. Williams, -- U.S. --, 133 S. Ct. 1088, 1091 (2013). Thus, the Supreme Court concluded, the Sixth Amendment claim before it "must be presumed to have been adjudicated on the merits by the [state] courts" even though not specifically addressed. Id. The Supreme Court concluded:

> In sum, because it is by no means uncommon for a state court
> to fail to address a federal claim that the court has not
> simply overlooked, we see no sound reason for failing to
> apply the Richter presumption in cases like the one now
> before us. When a state court rejects a federal claim

30

> without expressly addressing that claim, a federal habeas
> court must presume that the federal claim was adjudicated
> on the merits – but that presumption can in some limited
> circumstances be rebutted.

Id. at 1096. While it is true that when a federal claim has been rejected as a result of "sheer inadvertence, it has not been evaluated based on the intrinsic right and wrong of the matter," id. at 1097, under the Supreme Court's holding in Williams this court may not assume that the state court simply overlooked the federal claim when it addressed some issues without expressly addressing the federal claims in question, id. at 1091. The court must presume that the North Carolina Supreme Court adjudicated Hurst's federal constitutional claims related to the presence of a newspaper in the jury room on the merits.

Although the Respondent is entitled to a presumption that Hurst's constitutional claims were adjudicated on the merits, that presumption is rebuttable. Id. at 1097. "The presumption may be overcome when there is reason to think some other explanation of the state court's decision is more likely." Richter, 131 S. Ct. at 785. Even so, "the Richter presumption is a strong one that may be rebutted only in unusual circumstances." Williams, 133 S. Ct. at 1096. No such circumstances exist here.

Hurst argues that the North Carolina Supreme Court decided whether a mistrial should be granted pursuant to N.C. Gen. Stat. § 1061, not whether a federal constitutional violation had occurred. In support of this statement and against application of the Richter presumption, Hurst quotes from the North Carolina Supreme Court's opinion: "[t]his questioning was sufficient to support the trial court's findings . . . and was fully adequate *under our law*." (Doc. 55 at 17 (quoting Hurst, 360 N.C. at 190, 624 S.E.2d at 318 (emphases added)).) Consideration of the phrase "under our law," however, must take into account what is left out by Hurst's ellipsis. The opinion, after reviewing the trial court's extensive questioning of regular and prospective alternate jurors regarding awareness of the newspaper, states that this questioning "was sufficient to support the trial court's findings *that the regular jury was not exposed to the article* and was fully adequate under our law." Hurst, 360 N.C. at 190, 624 S.E.2d at 318 (emphasis added). Having addressed Hurst's federal constitutional claims by finding that the regular jurors were not exposed to the article, there was no need for the North Carolina Supreme Court to say more.

Further, it is clear from the record that the North Carolina Supreme Court addressed the question of mistrial for the purposes of considering whether federal constitutional rights had been

implicated. One need only look to Hurst's state court appellate brief, where he asserted his right to confront the evidence against him under the Sixth Amendment to the United States Constitution and the North Carolina Constitution. (State's Exhibit E ("Defendant-Appellant's Brief") at 60, 62 (secondarily referencing right to a fair and impartial jury and due process).) This is in accord with how North Carolina courts examine confrontation challenges. State v. Ray, 336 N.C. 463, 468, 444 S.E.2d 918, 922 (1994) ("Under the Sixth Amendment to the United States Constitution and Article I, § 23 of the North Carolina Constitution, a criminal defendant has the right to confront witnesses against him.").

In state court, Hurst tied his federal and North Carolina constitutional assertions to N.C. Gen. Stat. § 15A-1061, which requires a mistrial if there is an "error" or "legal defect" during the trial "resulting in substantial and irreparable prejudice to the defendant's case." (Defendant-Appellant's Brief at 61.) Pursuant to this directive, the North Carolina Supreme Court applied the rule that the trial court must question jurors when there is a substantial reason to fear that the jury has become aware of improper and prejudicial matters. Hurst, 360 N.C. at 190, 624 S.E.2d at 317. It is logical that the North Carolina Supreme Court would address federal constitutional claims in that context. As recognized in the

33

Recommendation, North Carolina courts have consistently observed that, under section 15A-1061, "errors" and "legal defects" related to federal constitutional protections can provide the "prejudice" mandating a mistrial under section 15A-1061. (Doc. 53 at 88-89.)

The North Carolina Supreme Court's analysis under section 15A-1061 and related reference to "under our law" therefore provides insufficient evidence to overcome the presumption that Hurst's federal constitutional claims were adjudicated on the merits in state court proceedings. Further, Hurst did not ask for a rehearing before the North Carolina Supreme Court (see Doc. 1 at 3-4) or argue before the MAR court that his federal constitutional claims had been overlooked (see id. at 25). Nor did the petition suggest anything other than a review under section 2254(d). (See Doc. 1 at 24-26; Doc. 1-1 at 77-78 (noting Hurst raised Claim IX on direct appeal and "[t]he North Carolina Supreme Court found no error"), 82 (asserting unreasonableness of North Carolina Supreme Court decision and that such "was contrary to or an unreasonable application of clearly established Supreme Court law").) As noted by the Supreme Court in Williams, this scenario decreases "[t]he possibility that the [state] Court of Appeal had simply overlooked" Hurst's federal constitutional claims. See Williams, 133 S. Ct. at 1099 (noting that

34

the issue in that case was first raised by two judges during oral argument in the Ninth Circuit).

Hurst further objects to the Recommendation's finding that the North Carolina Supreme Court's acknowledgment of State v. Barts, 316 N.C. 666, 681-83, 343 S.E.2d 828, 838-40 (1986), "thus impliedly confirms its recognition that claims like that presented by Petitioner include a federal constitutional component." (Doc. 55 at 16-17 (objection 2 (quoting Doc. 53 at 85 [sic - Doc. 53 at 88 n.39])).) Because Williams and this court's analysis above resolve the presumption issue, resolution of this objection does not change the outcome. Even so, this objection fails. The Recommendation correctly described the implication of Barts. See Barts, 316 N.C. at 683, 343 S.E.2d at 839 (1986) (citing Aston v. Warden, Powhatan Correctional Ctr., 574 F.2d 1169 (4th Cir. 1986), which, in turn, addressed evidence of prejudice sufficient to require further inquiry by trial judge in the context of the Sixth Amendment right to an impartial jury which is central to due process). The North Carolina Supreme Court's failure to discuss the federal implications of Barts in the Hurst decision did not run afoul of Williams, nor did the failure overcome the presumption that the North Carolina

Supreme Court adjudicated the federal constitutional claims on the merits.[8]

The court has undertaken an independent examination of the record and finds the adjudication of Claim IX resulted in neither a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, nor in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See 28 U.S.C. § 2254(d).[9] Further, as a result of its review the court finds that Claim IX would, if reached, properly be denied under a *de novo* review

---

[8] Petitioner objects to the Recommendation's placement of Barts in brackets at a point in the North Carolina Supreme Court's opinion where it does not appear by name. (Doc. 55 at 17.) The quotation set out in the objection, however, is taken directly from Barts -- a link that is easily made by reference to the citation in the Hurst opinion. There is no reason to assume that the North Carolina Supreme Court was unaware of the ultimate source of the quotation appearing in its opinion. This is particularly true where the citation for the quoted material itself states "(citation omitted)," showing an awareness of the ultimate citation to Barts.

[9] Hurst takes exception to a footnote in the Recommendation which states that even if the court were to determine that no adjudication on the merits occurred because the North Carolina Supreme Court failed to refer explicitly to the United States Constitution, "the Court also arguably would have to conclude that Petitioner failed to preserve any such claim, given that his trial counsel did not expressly invoke any federal constitutional provision in moving for mistrial." (Doc. 55 at 18, objection 4 (quoting Doc. 53 at 89 n.40).) The objection is unpersuasive in light of Williams, the analysis in the Recommendation, and this court's *de novo* review with respect to the Recommendation.

for the same reasons set out in the Recommendation. (See Doc. 53 at 90-92.)

The court has reviewed Hurst's other Claim IX objections and finds they do not warrant further discussion. The Recommendation, as modified herein, will therefore be adopted as to Claim IX.

### D. Remaining Objections

The court has reviewed Petitioner's remaining claims to which objections were made and conducted a *de novo* review. The court has also reviewed the remaining claims to which no objection was made for clear error. The court's determination is in accord with the Recommendation, which will be adopted, as modified herein.

## IV. CONCLUSION

For the reasons set forth herein,

IT IS THEREFORE ORDERED that Petitioner's Second Motion to Stay and Hold in Abeyance Petitioner's Habeas Corpus Petition (Doc. 59) is DENIED;

IT IS FURTHER ORDERED that Respondent's Motion for Summary Judgment (Doc. 17) is GRANTED and that the petition (Docs. 1, 1-1) is DENIED.

In this capital case, Petitioner has made a sufficiently substantial showing of the denial of a constitutional right under 28 U.S.C. § 2253(c)(2) to warrant the grant of a certificate of

appealability with respect to the issue of whether the juror's contact with her father violated Petitioner's Sixth Amendment rights under the United States Constitution (Claim I).  A certificate of appealability is therefore issued on this question.  28 U.S.C. § 2253(c)(3).  With respect to his other claims, Petitioner has not made a substantial showing of the denial of a constitutional right and, as a result, a certificate of appealability is denied as to those claims.

A Judgment will be entered contemporaneously with this Memorandum Opinion and Order.


                                          /s/   Thomas D. Schroeder
                                       United States District Judge

March 31, 2013