**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

JASON WAYNE HURST,⁣ )
)
Petitioner, )
)
v. )          1:10CV725
)
EDWARD THOMAS, Warden, Central )
Prison, Raleigh, North Carolina, )
)
Respondent.[1] )

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on Petitioner's Motion for Appointment of "*Martinez* Counsel" (Docket Entry 112). (See Docket Entry dated Oct. 6, 2017.)  Because the relief sought would contravene the mandate rule or, in the alternative, would involve an exercise in futility, the Court will deny the instant Motion.[2]

## BACKGROUND

Upon his conviction for first degree murder, Petitioner received a death sentence in the North Carolina Superior Court in Randolph County ("the Superior Court"), both of which the North Carolina Supreme Court affirmed.  See State v. Hurst, 360 N.C. 181, 624 S.E.2d 309 (2006).  The United States Supreme Court denied certiorari on October 2, 2006.  Hurst v. North Carolina, 549 U.S.

---

[1] "Edward Thomas is now the present Warden of North Carolina's Central Prison and has been substituted as Respondent." Barnes v. Thomas, No. 1:08CV271, 2018 WL 3659016, at *1 n.1 (M.D.N.C. Aug. 2, 2018) (unpublished) (citing Fed. R. Civ. P. 25(d)).

[2] "A motion for the appointment of counsel is a nondispositive matter that may be decided by a magistrate judge." Cardona v. Davis, No. 7:16CV125, 2016 WL 8736469, at *1 (N.D. Tex. Nov. 1, 2016) (unpublished); accord, e.g., Handy v. City of Sheridan, 636 F. App'x 728, 733-34 (10th Cir. 2016); Boothe v. Ballard, No. 2:14CV25165, 2016 WL 1275054, at *60 (S.D.W. Va. Mar. 31, 2016) (unpublished), aff'd, 670 F. App'x 193 (4th Cir. 2016); Daniels v. Ruan, No. 05CV922, 2007 WL 1125683, at *1 (S.D. Cal. Apr. 16, 2007) (unpublished).

875 (2006). On June 25, 2007, Petitioner (through new counsel, Robert H. Hale and Daniel J. Dolan (see Docket Entry 8 at 1)) filed a Motion for Appropriate Relief ("MAR") in the Superior Court, raising eight claims, i.e., that (1) a juror's contact with her father during the sentencing phase violated Petitioner's Sixth Amendment rights, (2) trial counsel provided ineffective assistance by failing to investigate and to present mitigating evidence at sentencing regarding Petitioner's age and mental state, (3) the Superior Court's acceptance of the verdict despite ambiguity as to unanimity violated Petitioner's federal constitutional rights, (4) the Superior Court's acceptance of the verdict without properly polling the jury violated Petitioner's federal constitutional rights, (5) trial counsel provided ineffective assistance by failing to challenge the acceptance of the verdict in the face of the ambiguity as to unanimity and the improper polling of the jury, (6) the Superior Court lacked jurisdiction, (7) trial counsel provided ineffective assistance by failing to contest the Superior Court's jurisdiction, and (8) inadequate advice by trial counsel denied Petitioner the right to testify. (See Docket Entries 2-1, 3-1; see also Docket Entry 5-1 (amending claim for denial of right to testify due to inadequate advice by trial counsel).)

After the Superior Court denied seven of the claims in the MAR (as amended) (see Docket Entry 6-1), Petitioner (again through Hale and Dolan) further amended his MAR, adding a (ninth) claim that trial counsel acted ineffectively by failing to investigate and to present mitigating evidence at sentencing about Petitioner's fetal

alcohol exposure (see Docket Entry 6-2). The Superior Court subsequently denied that claim and the remaining claim from the MAR. (See Docket Entry 6-3.) Petitioner then sought review in the North Carolina Supreme Court, which that court denied on June 16, 2010. State v. Hurst, 364 N.C. 244, 698 S.E.2d 664 (2010).

On September 20, 2010, Petitioner (through Hale and Dolan) commenced this case by filing a Petition under 28 U.S.C. § 2254 attacking his conviction and sentence on 13 grounds, i.e., (1) the MAR's improper juror contact claim, (2) a combination of the MAR's and the second amendment to the MAR's ineffective assistance claims for failure to investigate and to present mitigating evidence at sentencing, (3) the MAR's ambiguous verdict claim, (4) the MAR's improper jury polling claim, (5) the MAR's ineffective assistance claim for failure to challenge the unanimity of the verdict and the polling of the jury, (6) the MAR's lack of jurisdiction claim, (7) the MAR's ineffective assistance claim for failure to contest the Superior Court's jurisdiction, (8) the MAR's denial of right to testify claim, (9) a claim for juror exposure to a newspaper in the jury room, (10) a claim for improper jury instructions during the sentencing phase, (11) a claim for improper closing argument by the prosecution, (12) a claim for defective indictment as to first degree murder, and (13) a claim for defective indictment as to death-eligibility. (See Docket Entries 1, 1-1.)[3] On December 8, 2010, Respondent answered and moved for summary judgment. (Docket

---

[3] At Petitioner's specific request (see Docket Entry 8 at 2), the undersigned Magistrate Judge appointed Hale and Dolan to continue representing Petitioner in this Court, pursuant to 18 U.S.C. § 3599, effective June 17, 2010 (see Docket Entry 10 at 4).

Entries 16, 17.)   Petitioner opposed that motion (Docket Entries 22-24) and Respondent replied (Docket Entry 36).

The undersigned Magistrate Judge then recommended entry of summary judgment for Respondent on all of Petitioner's claims and denial of the Petition.   (See Docket Entry 53.)   Petitioner objected as to eight (of his original 13) claims, including the improper juror contact claim and one of the three ineffective assistance claims (i.e., for failing to challenge the unanimity of the verdict and the polling of the jury).   (See Docket Entry 55.) The Court (per now-Chief United States District Judge Thomas D. Schroeder) overruled those objections, entered summary judgment for Respondent, and denied the Petition.   (See Docket Entries 67, 68.)[4]

Petitioner appealed the denial of his Petition (see Docket Entry 71), but only pursued his claim "that his Sixth Amendment rights to an impartial jury and to be confronted with the witnesses against him were violated by an extraneous communication between a juror and her father during the penalty phase of his capital murder trial," Hurst v. Joyner, 757 F.3d 389, 391 (4th Cir. 2014).   The United States Court of Appeals for the Fourth Circuit resolved the appeal by "revers[ing] th[is C]ourt's judgment and remand[ing] for an evidentiary hearing to determine whether the extraneous communication had a substantial and injurious effect or influence on the jury's verdict."   Id.; see also id. at 397 ("Recently, . . . [the Fourth Circuit] held that . . . ['an] entitlement to an

_____

[4] After Petitioner filed his objections, but before the Court entered the order and the judgment denying the Petition, the undersigned Magistrate Judge granted Dolan's request to withdraw as counsel for Petitioner and declined to appoint a new, second counsel at that time. (See Text Order dated Nov. 2, 2012.)

evidentiary hearing [arises] when the defendant presents a credible allegation of communications or contact between a third party and a juror concerning the matter pending before the jury.'" (quoting Barnes v. Joyner, 751 F.3d 229, 242 (4th Cir. 2014))), 398 ("[The] holding in *Barnes* dictates the same result in this case."), 400 ("On remand, [Petitioner] will be given the opportunity to develop the record as it pertains to [the juror's] extraneous conversation with her father . . . . [T]he judgment of the district court is reversed and the matter remanded for an evidentiary hearing on the issue of whether the communication between [the juror] and her father about the Bible verse had a substantial and injurious effect or influence in determining the jury's verdict.").

After the United States Supreme Court denied certiorari, Joyner v. Barnes, ___ U.S. ___, 135 S. Ct. 2643 (2015), the case was referred back to the undersigned Magistrate Judge to carry out the Fourth Circuit's mandate (see Docket Entry dated Nov. 4, 2015) and an evidentiary hearing was set (see Text Order dated Nov. 4, 2015; see also Text Order dated Nov. 17, 2015 (continuing hearing date)). On December 10, 2015, Elizabeth Hambourger was appointed as a second counsel for Petitioner. (See Docket Entry 95.) The evidentiary hearing took place on January 22, 2016 (see Docket Entry 104) and post-hearing briefing followed (see Text Order dated Jan. 25, 2016; Docket Entries 105, 107, 108). On October 2, 2017, prior to the entry of a recommendation on the lone claim as to which the Fourth Circuit ordered an evidentiary hearing, Petitioner (through Hale and Hambourger) filed the instant Motion. (See

Docket Entry 112.)  Respondent responded in opposition (Docket Entry 113) and Petitioner replied (Docket Entry 114).

DISCUSSION

Via the instant Motion, Petitioner, "by counsel, [has] request[ed] that qualified independent counsel be allowed to investigate, pursuant to *Martinez v. Ryan*, [566 U.S. 1] (2012), potential claims not raised in prior post-conviction proceedings and raise any new claims in an Amended Petition for Writ of Habeas Corpus to be filed in this Court." (Docket Entry 112 at 1; see also id. at 3 ("Petitioner asks this Court to:  1. Provide Petitioner with qualified, independent counsel to review his case for claims that could be raised under *Martinez*; [and] 2. Allow appointed counsel to file an Amended Petition for Writ of Habeas Corpus containing any additional claims within 120 days of appointment." (full case name and citation for Martinez omitted)).) In the case cited by Petitioner, the United States Supreme Court held that "[i]nadequate counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Martinez, 566 U.S. at 9 (emphasis added).  Subsequently, "[i]n *Juniper v. Davis*, 737 F.3d 288, 289 (2013), [the Fourth Circuit] held that a habeas petitioner, who has been sentenced to death and appointed counsel pursuant to 18 U.S.C. § 3599(a)(2) to pursue federal postconviction relief, is entitled to the appointment of qualified, independent legal counsel for the purpose of investigating whether he has any *Martinez*-based [ineffective assistance of trial counsel] claims if

-6-

his § 3599 counsel *also* represented him in the state postconviction proceedings." <u>Fowler v. Joyner</u>, 753 F.3d 446, 461 (4th Cir. 2014) (emphasis in original); <u>see also</u> <u>id.</u> at 461-62 n.6 ("Pursuant to 18 U.S.C. § 3599, 'in any post conviction proceeding under section 2254 or 2255 of title 28, United States Code, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate legal representation shall be entitled to the appointment of one or more attorneys' meeting the practice qualifications set forth in subsections (b) through (d)." (internal brackets and ellipsis omitted)), 463 ("Because some claims [of ineffective assistance by trial counsel] may fall within the *Martinez* exception to [procedural default], North Carolina [death-sentenced] petitioners are therefore entitled upon request to the appointment of qualified, independent counsel for the purposes of investigating whether any such claims exist.").

The instant Motion contends that, together, <u>Fowler</u>, <u>Juniper</u>, and <u>Martinez</u> entitle Petitioner to appointment of Hambourger and/or another attorney (other than Hale) "to conduct a *Martinez* review" (Docket Entry 112 at 2, 3), because:

1) "Petitioner has never received review of his case by independent '*Martinez* counsel' who were in a position to investigate and present claims of ineffectiveness of state post-conviction counsel" (<u>id.</u> at 2);

2) "Hale is not ethically permitted to investigate and raise claims of his own ineffectiveness" (<u>id.</u>);

-7-

3) "Hambourger was appointed to represent Petitioner on the claim pending in this Court, which is one claim of juror misconduct" (id.); and

4) "Hambourger has not, to this point, been provided with the budget and resources to conduct a *Martinez* review" (id.).

This line of argument ignores several, material circumstances that foreclose the relief requested in the instant Motion. As an initial matter, neither the Supreme Court (in <u>Martinez</u>) nor the Fourth Circuit (in <u>Juniper</u> and/or <u>Fowler</u>) recognized a right for federal habeas petitioners to "present <u>claims</u> of ineffectiveness of state post-conviction counsel" (id. at 2 (emphasis added)) – much less any and all types of "potential claims not raised in prior post-conviction proceedings" (id. at 1); to the contrary, the Supreme Court held only that "[i]nadequate counsel at initial-review collateral proceedings may establish <u>cause for a prisoner's procedural default of a claim of ineffective assistance at trial</u>," <u>Martinez</u>, 566 U.S. at 9 (emphasis added), and the Fourth Circuit held only that "federal habeas counsel can investigate and pursue the ineffectiveness of state habeas counsel in an effort <u>to overcome the default of procedurally barred ineffective-assistance-of-trial-counsel claims</u>," <u>Juniper</u>, 737 F.3d at 289 (emphasis added); <u>accord</u> <u>Fowler</u>, 753 F.3d at 463.

Further, <u>Martinez</u> did <u>not</u> address appointment of counsel, <u>see</u> <u>Martinez</u>, 566 U.S. at 9 ("The precise question here is whether ineffective assistance in an initial-review collateral proceeding on a claim of ineffective assistance at trial may provide cause for

a procedural default in a federal habeas proceeding."), and neither
Juniper nor Fowler addressed the authority of a district court to
appoint independent federal habeas counsel to pursue ineffective
assistance of trial counsel claims which state habeas counsel did
not pursue, when the request for such independent counsel comes not
before the district court enters final judgment on the federal
habeas petition and/or the Fourth Circuit enters final judgment on
a subsequent appeal, but rather only after the entry of a final
judgment in the district court denying the federal habeas petition
and the entry of a final judgment on direct appeal remanding one
claim for an evidentiary hearing, see Fowler, 753 F.3d at 460
(explaining that, while appealing the denial of his federal habeas
petition, the petitioner filed "a Motion for Appointment of
Qualified and Independent Counsel," which "ask[ed] that [the Fourth
Circuit] defer resolution of his habeas appeal, designate his
current counsel to be 'Martinez counsel,' and remand th[e] case to
the district court to allow counsel to investigate whether there
are any substantial ineffective-assistance-of-trial-counsel claims
that were not timely presented to the North Carolina state court");
Juniper, 737 F.3d at 289 (observing that district court "issued a
certificate of appealability . . . [as to] whether [the petitioner]
was entitled to the appointment of new counsel under Martinez").

The difference in the procedural posture at which the Martinez
issue arose in the latter two cases and in this case carries
dispositive significance, in light of the mandate rule, as this
Court (per Chief Judge Schroeder) recently held in an analogous

-9-

situation.  See Barnes v. Thomas, No. 1:08CV271, 2018 WL 3659016,
at *9 (M.D.N.C. Aug. 2, 2018) (unpublished) ("The Fourth Circuit
remanded this matter to this [C]ourt for an evidentiary hearing to
determine whether . . . juror misconduct . . . had a substantial
and injurious effect or influence on the jury's verdict.  The
resolution of that issue by this [C]ourt does not involve
procedural default or otherwise implicate Martinez.  To the extent
[the petitioner] is attempting to assert a new claim [of
ineffective assistance of trial counsel], the request exceeds the
scope of the remand and would violate the mandate of the Fourth
Circuit." (internal citation and quotation marks omitted)).[5]

_____

    [5] In arguing that the Court should appoint a second attorney to serve with
Hambourger, the instant Motion states that "[o]ther petitioners, including
petitioners in this Court, have been provided with two qualified, independent
counsel for *Martinez* purposes." (Docket Entry 112 at 3.)  Petitioner appended
"[s]everal such orders . . . to th[e instant] Motion." (Id.; see also Docket
Entry 112-1 at 1 (appointing Hambourger as Martinez "co-counsel" for the
petitioner who prevailed in Juniper), 7 (appointing Hambourger as Martinez "co-
counsel" for the petitioner in Gray v. Pearson, No. 1:11CV630 (E.D. Va.)), 12
(appointing Hambourger and another attorney as Martinez counsel for the
petitioner in Tucker v. Thomas, No. 1:07CV868 (M.D.N.C.)), 14 (appointing
Hambourger as Martinez "co-counsel" for the petitioner in Parker v. Thomas, No.
5:03HC966 (E.D.N.C.)).)  To the extent that Petitioner intended the foregoing
statement and attachment of orders to support not just (A) his position regarding
the subsidiary question of whether the Court should appoint a second Martinez
counsel (if the Court concludes that it should designate Hambourger or should
appoint a different attorney as a first Martinez counsel), but also (B) his
position regarding the preliminary question of whether the Court should designate
Hambourger (or, alternatively, should appoint a different attorney) as a first
Martinez counsel, the Court observes that the orders in those cases do not impact
the mandate rule analysis in this case, because:  (1) as detailed above, the
Fourth Circuit's remand in Juniper expressly ordered appointment of Martinez
counsel in response to the petitioner's appeal of the district court's denial of
his request for such relief during his initial proceedings in the district court;
(2) the circumstances of Hambourger's appointment in the Gray case mirrored
exactly the circumstances of her appointment in the Juniper case, see Gray v.
Pearson, 526 F. App'x 331, 332 (4th Cir. 2013); (3) Hambourger's appointment in
the Tucker case did not follow a Fourth Circuit remand, see Docket, Tucker v.
Thomas, No. 1:07CV868 (M.D.N.C.); and (4) the order appointing Hambourger in the
Parker case (which evidently did follow a Fourth Circuit remand, see Parker v.
Branker, slip op., No. 08-05 (4th Cir. Apr. 8, 2009)) did not consider the
implications of the mandate rule (see Docket Entry 112-1 at 14).

"This 'mandate rule' is a more powerful version of the law of the case doctrine and is based on the principle that an inferior tribunal is bound to honor the mandate of a superior court within a single judicial system."  Invention Submission Corp. v. Dudas, 413 F.3d 411, 414 (4th Cir. 2005) (some internal quotation marks omitted).  That principle and its implications for a federal district court charged with carrying out a remand from a federal appellate court date back nearly two centuries, to a case in which the United States Supreme Court declared as follows:

> [An] inferior court is bound by the decree [of a higher court] as the law of the case; and must carry it into execution, according to the mandate.  They cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it upon any matter decided on appeal for error apparent; or intermeddle with it, further than to settle so much as has been remanded.

Sibbald v. United States, 37 U.S. 488, 492 (1838) (emphasis added); see also Doe v. Chao, 511 F.3d 461, 465 (4th Cir. 2007) ("Indeed, 'in its earliest days, the Supreme Court consistently held that an inferior court has no power or authority to deviate from the mandate issued by an appellate court.  The rule of these cases has been uniformly followed in later days.'" (quoting Briggs v. Pennsylvania R.R. Co., 334 U.S. 304, 306 (1948)) (internal brackets and ellipsis omitted)).

Consistent with that venerable Supreme Court precedent, the Fourth Circuit held (40 years ago) that, on remand, the "[f]urther jurisdiction of the district court [i]s dependent upon the terms of the appellate mandate, and the [district] court ha[s] no authority . . . to conduct any proceedings except those specifically

authorized by the appellate judgment." Gonzales v. Fairfax-Brewster Sch., Inc., 569 F.2d 1294, 1297 (4th Cir. 1978) (emphasis added).[6]  Moreover, the Fourth Circuit recently reiterated that, when it remands a case to a district court, "the mandate rule forecloses litigation of issues foregone on appeal or otherwise waived, for example because they were not raised in the district court." United States v. Pileggi, 703 F.3d 675, 679 (4th Cir. 2013) (internal ellipsis and quotation marks omitted).  Put another way, "under the mandate rule a remand proceeding is not the occasion for raising new arguments or legal theories." Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co., 510 F.3d 474, 481 (4th Cir. 2007); see also Pileggi, 703 F.3d at 680 ("[A litigant] is not permitted to use the accident of a remand to raise an issue that it could just as well have raised in the first appeal." (internal brackets, ellipsis, and quotation marks omitted)); Doe, 511 F.3d at 467 ("The district court was not free to use th[e Fourth Circuit's] remand on a totally separate issue as an opportunity to breathe life into [a] long abandoned claim.").[7]

In this case, Petitioner "did not raise the [Martinez-related issue] in the earlier proceedings, either in th[is C]ourt or in th[e Fourth Circuit]. . . .  Consequently, [this Court] properly [must] conclude[] that [Petitioner] ha[s] waived [hi]s contention

---

[6] Given the jurisdictional nature of this limitation, the Court must enforce it, even if the parties do not raise it. See, e.g., Davis v. Pak, 856 F.2d 648, 650 (4th Cir. 1988) ("[I]t is always incumbent upon a federal court to evaluate its jurisdiction sua sponte, to ensure that it does not decide controversies beyond its authority.").

[7] "The mandate rule [thereby] serves the interest of finality in litigation." Doe, 511 F.3d at 465 (internal quotation marks omitted).

on the [Martinez-related issue] and, as a result, [i]s not entitled to raise it on remand." Volvo Trademark, 510 F.3d at 481.[8] Simply put, "the scope of the remand . . . did not permit th[is C]ourt to broach the entirely new issue of whether [Petitioner] was entitled to [pursue new claims] . . . . Given that [Petitioner] never requested [such relief in prior proceedings], he clearly waived any such claim[s]." Doe, 511 F.3d at 466-67. In sum, "[t]he language of [the Fourth Circuit's] mandate . . . does not authorize th[is C]ourt to open the case for further adjudication [of new claims]. . . . [To the contrary, the Fourth Circuit's] instruction to th[is C]ourt was clear, direct, and limiting, and . . . [it must] follow the mandate as directed." Invention Submission, 413 F.3d at 415.[9]

Notably, Petitioner tacitly has acknowledged that the Fourth Circuit's remand limited this Court to holding an evidentiary hearing to resolve his improper juror contact claim, in that the instant Motion states: "Hambourger was appointed to represent

---

[8] The Supreme Court decided Martinez on March 20, 2012. See Martinez, 566 U.S. at 1. The undersigned Magistrate Judge did not recommend denial of the Petition until September 7, 2012 (see Docket Entry 53 at 105), and the Court (per now-Chief Judge Schroeder) did not deny the Petition until March 31, 2013 (see Docket Entry 67 at 38; Docket Entry 68 at 1). Accordingly, Petitioner could have raised any Martinez issue during the prior proceedings in this Court (just as the petitioner in Juniper raised the issue in his initial district court proceedings, see Juniper, 737 F.3d at 289). Moreover, the Fourth Circuit decided Juniper on December 10, 2013, see id. at 288, and Fowler on June 2, 2014, see Fowler, 753 F.3d at 446, but – even with that elucidation of Martinez (and in contrast to the petitioner in Fowler, see id. at 460) – Petitioner chose not to raise any argument premised on Martinez before the Fourth Circuit, as he could have done before it resolved his appeal on July 2, 2014, see Hurst, 757 F.3d at 389.

[9] "Deviation from the mandate rule is permitted only in a few exceptional circumstances, which include (1) when controlling legal authority has changed dramatically; (2) when significant new evidence, not earlier obtainable in the exercise of due diligence, has come to light; and (3) when a blatant error in the prior decision will, if uncorrected, result in a serious injustice. But it is clear that none of these exceptions applies here." Invention Submission, 413 F.3d at 415 (internal citation and quotation marks omitted).

-13-

Petitioner on the claim pending in this Court, which is <u>one claim</u> <u>of juror misconduct</u>."  (Docket Entry 112 at 2 (emphasis added) (citing Docket Entry 85 (Motion to Appoint Second Attorney) and Docket Entry 95 (Order appointing Hambourger)).)  Any such limitation on the scope of Hambourger's appointment to that "one claim" necessarily stemmed from the terms of the Fourth Circuit's remand and the strictures of the mandate rule, because neither the motion seeking Hambourger's appointment nor the order appointing her expressly cabined her representation.  (<u>See</u> Docket Entry 85 at 7 ("[U]ndersigned counsel [Hale] moves respectfully for this Court to appoint [] Hambourger as second counsel for [Petitioner] in this matter."); Docket Entry 95 at 1-2 ("THIS MATTER came on to be heard on motion by Petitioner . . . to have second counsel appointed to assist in his representation in this case . . . .  [His] motion for the appointment of second counsel is GRANTED. . . .  Hambourger, a member of the bar of this Court and who is otherwise qualified to serve as second counsel for [Petitioner] pursuant to Title 18 U.S.C. § 3599, is hereby appointed to do so pursuant to the dictates of that Section.  [She] is hereby directed to notice her appearance in this case at her earliest opportunity.").).[10]

Alternatively, if the Fourth Circuit's remand and the mandate rule did <u>not</u> limit the scope of this Court's post-remand authority to the re-examination (following an evidentiary hearing) of Petitioner's improper juror contact claim, then nothing about

---

[10] Hambourger's notice of appearance likewise contains no language limiting the scope of her representation.  (<u>See</u> Docket Entry 96 at 1 ("Hambourger hereby enters notice of appearance in the above-captioned matter.").)

-14-

Hambourger's appointment limited her ability to pursue new claims of ineffective assistance of trial counsel during the nearly 22 months between her appointment in this case and the filing of the instant Motion. Under that view (and as argued by Respondent), in that period, "Hambourger [wa]s already functioning as the independent counsel contemplated by Martinez. The Fourth Circuit has made it clear that no 'special designation' of 'Martinez Counsel' is required." (Docket Entry 113 at 6 (quoting Fowler, 753 F.3d at 465-66); see also Docket Entry 112 (setting forth Petitioner's statement that "Hambourger has no Martinez-conflict, as she did not represent Petitioner in state court").)

The Court thus would not now need to designate Hambourger (or to appoint any other attorney) as independent habeas counsel to pursue ineffective assistance of trial counsel claims Petitioner did not present in state court. See generally Fowler, 753 F.3d at 463 ("[The petitioner] is not entitled to the relief he seeks [including designation of his present lawyer as Martinez counsel and the opportunity to investigate new ineffective assistance of trial counsel claims]. . . . [The petitioner] had the benefit of qualified, independent counsel during the pendency of his federal habeas petition below who had ample opportunity to pursue any Martinez-based arguments on his behalf."). Indeed, Petitioner's (and Hambourger's) decision to wait almost two years to bring up the possibility of new ineffective assistance of trial counsel claims (not raised in state court) would defeat resort to the equitable exception to procedural default recognized in Martinez.

See Rhines v. Young, No. 5:00CV5020, 2015 WL 4651090, at *8 (D.S.D. Aug. 5, 2015) (unpublished) ("[The petitioner] did not seek leave to conduct the investigation [of unexhausted claims of ineffective assistance of trial counsel] sought by his pending motion for another 15 months [after litigation in the district court resumed]. [The petitioner] has offered no explanation for this delay. As the Supreme Court explained, the [procedural default] exception it created [in Martinez] was not only narrow, but also equitable. The untimeliness of [the petitioner's] motion is but another reason that justifies denying his request for another [chance to investigate such new claims]." (internal citations omitted)), reconsideration denied, 2016 WL 614665 (D.S.D. Feb. 16, 2016) (unpublished), aff'd, 899 F.3d 482 (8th Cir. 2018).[11]

Moreover, if the Court (1) could entertain new ineffective assistance of trial counsel claims (notwithstanding the mandate rule) and (2) would excuse (as part of the procedural default analysis) Petitioner's failure to pursue such claims for the

---

[11] Petitioner's (misleading) objection that "Hambourger has not, to this point, been provided with the budget and resources to conduct a Martinez review" (Docket Entry 112 at 2) does not alter the above conclusion. The Court never imposed any budgeting requirement on Petitioner and, prior to filing the instant Motion (nearly 22 months after Hambourger's appointment), Petitioner never asked for funds to pursue any Martinez-related matters. Further, although Petitioner's reply states that, "[b]efore filing the Motion at issue here, [] Hambourger called the CJA Budgeting Attorney for the Fourth Circuit and inquired whether, given the circumstances of her appointment and the current posture of the case, she could expect payment for any time spent reviewing or investigating Petitioner's case for Martinez issues, absent some prior approval from the Court" and received a negative response (Docket Entry 114 at 2-3), the reply conspicuously neglects to reveal exactly when that call happened (see id.). Perhaps Hambourger called shortly after her appointment; if so, an unreasonable delay then followed before the filing of the instant Motion. In the alternative, if Hambourger called shortly before the filing of the instant Motion, an unreasonable delay already had occurred. In any event, Petitioner has not shown that he acted with reasonable diligence in pursuing any Martinez-related issues.

-16-

approximately 22 months between Hambourger's appointment and the filing of the instant Motion, the Court still would not designate Hambourger (or appoint another attorney) as <u>Martinez</u> counsel, because the statute of limitations would foreclose any effort by Petitioner to amend the Petition to add new ineffective assistance of trial counsel claims.  In that regard, a habeas petition "may be amended . . . as provided in the rules of procedure applicable to civil actions."  28 U.S.C. § 2242.  Under said rules, "[a] party may amend its pleading once as a matter of course within:  (A) 21 days after serving it, or (B) . . . 21 days after service of a responsive pleading . . . ."  Fed. R. Civ. P. 15(a)(1).  Because (as shown in the Background section) those deadlines have long passed, Petitioner can amend his Petition "only with [Respondent's] written consent or the [C]ourt's leave," Fed. R. Civ. P. 15(a)(2).

Respondent has indicated his opposition to addition of new ineffective assistance of trial counsel claims.  (<u>See</u> Docket Entry 113.)  As for judicial leave, permission "to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment."  <u>United States v. Pittman</u>, 209 F.3d 314, 317 (4th Cir. 2000).  "Where [as here] the statute of limitations bars a cause of action, amendment may be futile and therefore can be denied."  <u>Id.</u>  Specifically, a one-year limitations period applies to federal habeas claims, <u>see</u> 28 U.S.C. § 2244(d)(1), and

> run[s] from the latest of --
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id.

Pursuant to Subparagraph (A),[12] Petitioner's conviction became final on or about October 2, 2006, i.e., when (as documented in the Background section) the United States Supreme Court denied review. See Clay v. United States, 537 U.S. 522, 527 (2003) (holding that "[f]inality attaches when th[e United States Supreme] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires" (internal citations omitted)). The federal habeas limitations period then ran until June 25, 2007, when (as documented in the Background section) Petitioner (through counsel)

---

[12] The record cannot support a finding that Subparagraphs (B) or (C) would entitle Petitioner to delayed commencement of the federal limitations period for any new ineffective assistance of trial counsel claims. First, as documented in the Background section, Petitioner made numerous filings in state and federal court between the completion of his direct appeal and the filing of the instant Motion, such that Subparagraph (B) could not apply. Subparagraph (C) likewise could provide no relief, because claims of ineffective assistance of trial counsel rest on Sixth Amendment principles of long standing, not any federal constitutional right newly recognized by the United States Supreme Court. As a final matter, because the factual predicate for any new claim of ineffective assistance of trial counsel that state habeas counsel should have pursued necessarily must have arisen and/or must have become evident no later than the conclusion of state habeas proceedings (a date, as documented in the Background section, more than seven years before Petitioner filed the instant Motion), Subparagraph (D) could not save any such claim(s) he someday might file.

filed his MAR, at which time approximately 99 days of that one-year period remained. The filing of that MAR tolled the deadline for federal habeas claims for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)," Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999) (construing 28 U.S.C. § 2244(d)(2)). Petitioner's federal limitations period thus began to run again on June 16, 2010, when (as documented in the Background section) the North Carolina Supreme Court denied review of the Superior Court's rejection of his (twice-amended) MAR.[13] The remaining 99 days of that period passed as of September 23, 2010.

Any ineffective assistance of trial counsel claim proposed thereafter still could qualify as timely if it "related back" to claims in the (timely-filed) Petition; however, under the circumstances presented, the relation-back doctrine only could save a claim "that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading," Fed. R. Civ. P. 15(c)(1)(B); see also Fed. R. Civ. P. 15(c)(1)(A) & (C) (allowing relation-back where statutory authority so dictates and amendment involves non-prejudicial party change, respectively). Furthermore, in the habeas context, "conduct, transaction, or

<hr />

[13] Unlike in the direct appeal context, Petitioner could not seek to exclude from the limitations calculations the 90 days after the conclusion of the state collateral proceedings, during which he theoretically could have sought certiorari review by the United States Supreme Court. See Crawley v. Catoe, 257 F.3d 395, 397-401 (4th Cir. 2001). Regardless, the addition of those 90 days would not impact the untimeliness analysis in this case.

occurrence" does not mean a petitioner's entire trial or sentencing. Mayle v. Felix, 545 U.S. 644, 664 (2005). Instead, only claims linked as to "time and type" with timely-filed claims "relate back." Pittman, 209 F.3d at 318 (internal quotation marks omitted). Lastly, "it is not sufficient that the new claim simply has the same form as the original claims . . . . Thus, 'a petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance.'" Ingram v. Buckingham Corr. Ctr., No. 3:09CV831, 2011 WL 836826, at *7 (E.D. Va. Mar. 4, 2011) (unpublished) (quoting United States v. Ciampi, 419 F.3d 20, 24 (1st Cir. 2005)), appeal dismissed, 468 F. App'x 236 (4th Cir. 2012); accord, e.g., Watkins v. Deangelo-Kipp, 854 F.3d 846, 850 (6th Cir.), cert. denied, ___ U.S. ___, 138 S. Ct. 101 (2017); United States v. Gonzalez, 592 F.3d 675, 679-80 (5th Cir. 2009).

Because any new claim of ineffective assistance of trial counsel could not meet the "relation-back" standard,[14] any such

---

[14] To begin, in light of the authority above, any new claim of ineffective assistance of trial counsel would <u>not</u> relate back to the Petition's three ineffective assistance claims. Further (as documented in the Background section), three other claims in the Petition (i.e., challenges to the verdict as ambiguous, for improper polling, and for lack of jurisdiction) mirror two of the Petition's ineffective assistance of trial counsel claims and thus Petitioner could not present <u>new</u> ineffective assistance of trial counsel claims related to those claims. Nor could Petitioner propose ineffective assistance of trial counsel claims related to the (six) claims in the Petition for denial of the right to testify, a newspaper's presence in the jury room, sentencing-phase jury instructions, sentencing-phase closing argument, improper indictment as to first degree murder, and improper indictment as to death-eligibility, because (as shown in the Background section) all those claims (which Petitioner abandoned by not pursuing them in his direct appeal of the denial of the Petition) conclusively
(continued...)

claim would fail as untimely, absent equitable tolling, see Holland v. Florida, 560 U.S. 631, 634 (2010) (recognizing that equitable tolling applies to federal habeas limitations period).  To secure equitable tolling, Petitioner must demonstrate that he "pursu[ed] his rights diligently," but "some extraordinary circumstance . . . prevented a timely filing."  Id. at 649 (internal quotation marks omitted).  As shown above, Petitioner's delay in filing the instant Motion for nearly two years after Hambourger's appointment (and more than five years after Martinez's issuance) forecloses any finding of diligent pursuit of his right to raise new ineffective assistance of trial counsel claim(s).  Nor can Petitioner rely on Martinez to satisfy the extraordinary circumstance element, as courts uniformly "have rejected the notion that anything in Martinez provides a basis for equitably tolling the filing deadline."  Lambrix v. Secretary, Fla. Dep't of Corr., 756 F.3d 1246, 1262 (11th Cir. 2014); accord, e.g., Lombardo v. United States, 860 F.3d 547, 557-61 (7th Cir. 2017); Arnold v. Clarke, No. 7:17CV453, 2017 WL 6065325, at *2 (W.D. Va. Dec. 7, 2017) (unpublished); Farmer v. Hunt, No. 5:16CV152, 2017 WL 3301365, at *5 (W.D.N.C. Aug. 2, 2017) (unpublished); McLaurin v. Perry, No. 5:14HC2160, 2015 WL 4139215, at *5 (E.D.N.C. July 9, 2015) (unpublished), appeal dismissed, 623 F. App'x 120 (4th Cir. 2015).

---

[14](...continued)
have failed on the merits, such that the underlying facts could not support a related ineffective assistance claim.  Finally, none of the circumstances surrounding the Petition's sole, surviving claim for improper juror contact (which, as shown in the Background section, Petitioner already has exhaustively investigated, including via an evidentiary hearing in which Hambourger participated) implicates his trial counsel in any related ineffective assistance.

In sum, as the Court (per Chief Judge Schroeder) recently concluded in an analogous case, "[e]ven if [new ineffective assistance of trial counsel] claim[s] were considered to fall within this [C]ourt's remand jurisdiction," Barnes, 2018 WL 3659016, at *9 n.10, the Court would deny the instant Motion, because, if Petitioner attempted "to raise a new claim of ineffective assistance of trial counsel under Martinez, it would be time-barred under 28 U.S.C. § 2254(d)," id.; see also Lambrix, 756 F.3d at 1262 ("[T]o the extent that [the petitioner] seeks to raise new ineffective-trial-counsel claims, there is no scenario under which those claims could be timely filed. Therefore, . . . [his] request for the appointment of counsel to file his ineffective-trial-counsel claims would be futile because *Martinez* did not relieve or alter [his] burden to file his claims within the statutory limitations period.").

## CONCLUSION

Appointing counsel to investigate and to litigate new claims of ineffective assistance by trial counsel would exceed the Fourth Circuit's mandate, which remanded this case to this Court for the limited purpose of holding an evidentiary hearing to resolve one claim (from among the 13 claims presented in the Petition). Alternatively, if the mandate rule allowed consideration in this Court of new ineffective assistance of trial counsel claims not raised in state court, nothing prevented Petitioner – through Hambourger (who did not participate in Petitioner's state court proceedings) – from attempting to present such claims during the

near-22 months between her appointment as his counsel and the filing of the instant Motion. From that perspective, Petitioner's request for appointment of <u>Martinez</u> counsel would fail as moot and his plan to force new ineffective assistance of trial counsel claims through <u>Martinez</u>'s narrow equitable exception to the procedural default doctrine would fail for lack of diligence. Finally, if (despite the mandate rule <u>and</u> Petitioner's decision to wait almost two years after Hambourger's appointment to raise the prospect of new ineffective assistance of trial counsel claims) the Court would possess authority to adjudicate such claims on remand <u>and</u> the <u>Martinez</u> exception would save such claims from procedural default, the statute of limitations would render futile any amendment of the Petition to add such claims (and, by logical extension, any designation of Hambourger or appointment of any other attorney(s) as <u>Martinez</u> counsel to pursue such an amendment).

    **IT IS THEREFORE ORDERED** that Petitioner's Motion for Appointment of "Martinez Counsel" (Docket Entry 112) is **DENIED.**

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 10, 2018